# IN THE
# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **MEHRDAD FOTOOHIGHIAM,** | ] |
| Plaintiff, | ] |
| | ] |
| v. | ] **Case No.** 2:24-cv-04213 |
| | ] |
| **THE CURATORS OF** | ] **PLAINTIFF DEMANDS JURY TRIAL** |
| **THE UNIVERSITY OF MISSOURI,** | ] |
| | ] |
| and | ] |
| | ] |
| **UNIVERSITY OF MISSOURI** | ] |
| **POLICE DEPARTMENT,** | ] |
| | ] |
| and | ] |
| | ] |
| **CHIEF BRIAN WEIMER,** | ] |
| Individually and Officially, | ] |
| | ] |
| and | ] |
| | ] |
| **CARI LYMAN,** | ] |
| Individually and Officially, | ] |
| | ] |
| and | ] |
| | ] |
| **OFFICER CLIFFORD,** | ] |
| Individually, and officially, | ] |
| | ] |
| and | ] |
| | ] |
| **OFFICER BERKERT,** | ] |
| Individually, and officially, | ] |
| | ] |
| and | ] |
| | ] |
| **POLICE OFFICER JOHN DOE # 1,** | ] |
| Individually and Officially, | ] |
| | ] |
| and | ] |

| UMC HUMAN RESOURCE OFFICER | ] |
| **JOHN DOE #2,** | ] |
| Individually and Officially, | ] |
| **Defendants**. | ] |
|  | ] |

# FIRST AMENDED
# COMPLAINT FOR VIOLATIONS
# OF CIVIL RIGHTS AND STATE LAW CLAIMS

Plaintiff **Mehrdad Fotoohighiam** ("Plaintiff") files this **First Amended Complaint** for violations of his civil rights under **42 U.S.C. § 1983**, and claims for statutory damages under **Title VII** of the Civil Rights Act of 1964, **Missouri Human Rights Act (MHRA)**, and other applicable state and federal laws. Plaintiff seeks relief for unlawful retaliation, denial of retirement benefits, violations of his constitutional rights, and other unlawful acts committed by the Defendants, as set forth herein.

# I.   PARTIES

1. **Plaintiff, Mehrdad Fotoohighiam**, is a resident of Columbia, Missouri, and a former employee of the University of Missouri-Columbia (UMC). He is an alumnus of the University of Missouri, holding multiple degrees, and has worked with several departments on the University campus for over 45 years. Plaintiff is bringing this action to seek redress for unlawful conduct committed by the Defendants, including violations of his constitutional rights, unlawful retaliation, denial of retirement benefits, and unlawful banning from University of Missouri facilities.

2. **Defendant, The Curators of the University of Missouri**, is a governing body of the University of Missouri system, a public institution of higher education located in Columbia, Missouri. The Curators are responsible for overseeing the operations and conduct of the University, including its employees, policies, and the actions of its agents, such as the University Police Department and Human Resources personnel.

3. **Defendant, Cari Lyman**, is the Director of Retirement and Human Resources at UMC, and she is being sued in her individual capacity for her role in denying Plaintiff's retirement benefits and for her involvement in the events leading to the unconstitutional ban from campus.

4. **Defendant, Chief Brian Weimer**, is the Chief of the University of Missouri-Columbia Police Department and is being sued in his individual capacity. He is

responsible for overseeing the actions of UMC Police officers and for implementing policies and actions that led to Plaintiff being unlawfully banned multiple times without cause from the University campus, and for making false claim that the incident was recorded by officers' bodycam, which later was erase.

5. **Defendant, UMC Police Department,** is a police department responsible for providing security and enforcing policies on the University of Missouri-Columbia campus. Plaintiff alleges that UMC Police officers violated his constitutional rights by unlawfully banning him multiple times from campus without cause.

6. **Defendant UMC Police Officer Clifford: A** UMC Police Officer whose full name is unknown, upon information and belief, were involved in the unlawful enforcement of Plaintiff's campus ban, including imposing restrictions on Plaintiff's ability to access campus facilities and other retaliatory actions. Plaintiff will seek to amend this complaint to specifically name Defendant Clifford once his identity is ascertained.

7. **Defendant UMC Police Officer Berkert:** A UMC Police Officer whose full name is currently unknown but, upon information and belief, was involved in the unlawful enforcement of Plaintiff's campus ban, including imposing restrictions on Plaintiff's ability to access campus facilities and other retaliatory actions. Plaintiff will seek to amend this complaint to specifically name Defendant Officer Berkert Doe# 1 once their identity is ascertained.

8. **Defendant UMC Police Officer John Doe # 1:** A currently unknown UMC Police Officer who, upon information and belief, were involved in the unlawful enforcement of Plaintiff's campus ban, including imposing restrictions on Plaintiff's ability to access campus facilities and other retaliatory actions. Plaintiff will seek to amend this complaint to specifically name Defendant John Doe # 1 once his identity is ascertained.

9. **Defendant UMC Human Resource Officer John Doe #2:** A currently unknown employee of the **University of Missouri-Columbia Human Resources Department**, who, upon information and belief, participated in the wrongful denial of Plaintiff's retirement benefits and engaged in actions that contributed to the unlawful treatment of Plaintiff, under the supervision and direction of **Cari Lyman**. Plaintiff will seek to amend this complaint to specifically name this Defendant once their identity is ascertained.

# II. JURISDICTION AND VENUE

### *Jurisdiction*

10. This Court has original jurisdiction over Plaintiff's federal claims pursuant to **28 U.S.C. § 1331**, which grants jurisdiction to the District Court for all civil actions arising under the Constitution, laws, or treaties of the United States. Specifically,

Plaintiff's claims arise under **42 U.S.C. § 1983** for violations of his First, Fourth, and Fourteenth Amendment rights.

11. This Court also has **supplemental jurisdiction** over Plaintiff's state law claims pursuant to **28 U.S.C. § 1367(a)**, as these claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution. These state law claims include, but are not limited to, violations of the **Missouri Human Rights Act (MHRA), intentional infliction of emotional distress**, and **negligent infliction of emotional distress**.

12. Venue is proper in this District pursuant to **28 U.S.C. § 1391(b)(2)** because a substantial part of the events or omissions giving rise to the claims occurred within the Western District of Missouri, specifically in Columbia, Missouri, where the University of Missouri-Columbia, its Police Department, and the UMC Human Resources Department are located, and where the unlawful acts complained of occurred.

# III. INTRODUCTION

13. Plaintiff, **Mehrdad Fotoohighiam**, Plaintiff, brings this lawsuit to seek redress for unlawful and retaliatory actions taken by Defendants, which include violations of his civil rights under **42 U.S.C. § 1983**, the **Missouri Human Rights Act (MHRA), Title VII of the Civil Rights Act of 1964**, and other related state and federal laws. Plaintiff was employed by the **University of Missouri-Columbia (UMC)** for **seven years**, after which he became an alumnus of the University. Despite being entitled to retirement benefits, Defendants unlawfully **denied Plaintiff's rightful retirement benefits, retaliated** against him for asserting his constitutional rights, and **unlawfully banned him from campus**, all in violation of his *First, Fourth, and Fourteenth Amendment* rights, as well as **Title VII** protections against retaliation.

14. Plaintiff, **Mehrdad Fotoohighiam**, brings this lawsuit to seek redress for unlawful and retaliatory actions taken by Defendants, which include violations of his civil rights under **42 U.S.C. § 1983**, the **Missouri Human Rights Act (MHRA), Title VII of the Civil Rights Act of 1964**, and other related state and federal laws. Plaintiff, who is of **Iranian descent**, was employed by the **University of Missouri-Columbia (UMC)** for **seven years** and is entitled to retirement benefits. Despite his rights, Defendants unlawfully **denied Plaintiff's rightful retirement benefits, retaliated** against him for asserting his *First Amendment* rights, and **unlawfully banned him from campus**, all in violation of his *First, Fourth*, and *Fourteenth Amendment* rights, as well as **Title VII** protections against **national origin discrimination** and retaliation.

15. Plaintiff's claims arise from a series of unlawful actions by the University and its employees, including, but not limited to:

a. The **denial of retirement benefits** to which Plaintiff was lawfully entitled under UMC's retirement plan, and the **discriminatory practices** Plaintiff experienced, potentially in violation of **Title VII** based on his **national origin**.

b. **Retaliation for asserting constitutional rights**, including unlawful actions taken by UMC employees in response to Plaintiff's attempts to claim his retirement benefits and actions that qualify as retaliation under **Title VII** and the *First Amendment*.

c. An **unlawful campus-wide ban** imposed without cause or explanation, which deprived Plaintiff of his rights to access public services and attend University functions, potentially linked to discrimination based on his national origin.

d. The **failure to provide due process** in addressing Plaintiff's retirement claim, including improper treatment by university staff and officers.

e. **National origin discrimination** and retaliation under **Title VII**, specifically for the unlawful denial of Plaintiff's retirement benefits and the retaliatory actions following his assertion of his rights.

16. Defendants, including **UMC**, its **Police Department**, and several **individual employees**, are responsible for these unlawful actions, which have caused Plaintiff significant harm, including **severe emotional distress, financial hardship, preventing Plaintiff from visiting his physicians at University Medical Center and receive medical care, Preventing Plaintiff from conducting ongoing business relationship with University faculty and staff and students, preventing Plaintiff's company to work with and participate in U.S. General Services Administration program, preventing plaintiff's company from annual certification with U.S. Small Business Administration, preventing Plaintiff from locating and communicating with his children with fiduciary responsibilities,** and **reputational damage**.

17. Plaintiff seeks to hold Defendants accountable for these violations and seeks appropriate relief, including **compensatory and punitive damages, statutory damages, attorney's fees**, and **costs** as permitted by law.

18. Additionally, Plaintiff seeks **injunctive and declaratory relief** to prevent further harm and to ensure that the Defendants are held accountable for their actions.

# IV. STATEMENT OF FACTS

*Plaintiff's Employment and Retirement Claim:*

19. Plaintiff, Mehrdad Fotoohighiam, was employed at the University of Missouri-Columbia (UMC) from 1977 to 1984, a total of 7 years. As an employee with

more than five years of service, Plaintiff is entitled to retirement benefits under UMC's retirement plan, which is provided to employees after 5 years of service.

20. On August 31, 2022, Plaintiff approached the Human Resources Department at UMC to initiate his rightful retirement claim. Specifically, Plaintiff met with Cari Lyman, the Director of Human Resources, to request his retirement benefits, in accordance with the University's policies.

21. During this meeting, Cari Lyman informed Plaintiff that the HR department had been dissolved, and that Plaintiff's employment records had been destroyed. Only a limited number of 12 pages of documents were available, which indicated that at one count Plaintiff had worked only 4.81 years, and later she changed that to 4.75 years at UMC, instead of the 7 years he had worked. The documents provided were incomplete and did not reflect Plaintiff's full employment history.

22. Plaintiff questioned the accuracy of these records, as he had worked a full 7 years at UMC, and asserted his right to retirement benefits under the University's policies. Plaintiff requested that the documents be corrected to reflect his full employment history. At this point, Cari Lyman summoned three UMC Police Officers, including Officers Clifford and Berkert and others, to the HR office to first threaten the Plaintiff with one-month ban from visiting the HR office, and a few minutes later officer Clifford changed the ban to one-year ban from the entire campus, without cause, and falsely claimed some other departments on campus had also complained about disturbance caused by Plaintiff.

### *Unlawful Ban and Retaliation:*

23. **Defendants retaliated against Plaintiff** for asserting his rights by imposing a **campus-wide ban for one year**. Initially, Plaintiff was banned from the **Human Resources office** for one month. **Later, this ban was extended to the entire UMC campus** for a year, again with no justification or explanation.

24. **Defendant Officers Clifford and Berkert** and other UMC Police officers, including **John Doe # 1; as well as UMC Human Resource Officer John Doe # 2, imposed the ban arbitrarily.** When Plaintiff questioned the ban, **Officer Clifford specifically told Plaintiff, "Because I said so,"** even after Plaintiff explained his status as an alumnus and his ongoing connections to UMC through his children, who were students at the University, and for having been doing business with University staff and faculty and students alike.

25. **Plaintiff recorded the entire interaction**, and there is no evidence that he acted disrespectfully or provocatively during the exchange. Despite this, Plaintiff was unjustly banned from the University campus, an action that severely disrupted his ability to access public services, educational resources, and maintain personal and professional connections to the University.

26. This ban was **part of a larger pattern of retaliation** by UMC. Defendants' actions were motivated by Plaintiff's **exercise of protected constitutional rights,**

including his right to petition the government for redress of grievances and his right to challenge the denial of his retirement benefits.

27. **This conduct was not isolated**. Plaintiff's treatment was consistent with a broader **custom, policy, or practice** at UMC, wherein individuals who assert their rights or challenge UMC's decisions, especially regarding benefits and employment matters, are subjected to retaliatory actions. **Defendant Lyman and other UMC officials** failed to act in accordance with the law and instead engaged in retaliatory behavior aimed at silencing and punishing Plaintiff by banning him multiple times from the campus.

### *Failure to Provide Due Process:*

28. **Despite Plaintiff's repeated requests**, UMC failed to provide any **due process** regarding his retirement claim and the ban imposed on him. Plaintiff made multiple attempts to resolve the situation, including calls, emails, and written inquiries, to Defendant Lyman, Defendant Chief Brian Weimer, and other UMC officials, seeking answers and clarification about the status of his retirement claim.

29. Plaintiff's efforts were largely ignored. No meaningful response or explanation was provided regarding the wrongful denial of his retirement benefits or the illegal campus ban. Defendants' **failure to act** in a timely or lawful manner further deprived Plaintiff of his rights.

30. **UMC's failure to train and supervise** its employees adequately also played a role in this systemic denial of due process. Defendants failed to ensure that their employees, including Defendant Lyman and members of the UMC Police Department, understood the proper legal protocols for handling retirement claims and for respecting individuals' rights to challenge unlawful actions.

### *Retaliation and Discriminatory Practices:*

31. **In addition to retaliating against Plaintiff for asserting his rights**, the actions taken by Defendants were **discriminatory** in nature. Plaintiff is of **Iranian descent**, and the discriminatory treatment Plaintiff faced further compounded the retaliatory actions against him. Defendants' actions were **motivated by Plaintiff's ethnicity** and the assertion of his rights in the face of systemic discrimination.

32. **Plaintiff filed a complaint with the Missouri Commission on Human Rights** in response to the denial of his retirement benefits and the discriminatory treatment he faced. Following an **eight-month investigation**, the Missouri Commission on Human Rights issued **two Letters to Sue** (LTS), finding probable cause to support Plaintiff's claims of discrimination and retaliation in violation of the **Missouri Human Rights Act** (MHRA).

33. The **denial of Plaintiff's retirement benefits** and **unlawful campus ban** caused **severe emotional distress, financial hardship, preventing Plaintiff from visiting his physicians at University Medical Center and receive medical care,**

**Preventing Plaintiff from conducting ongoing business relationship with University faculty and staff and students, preventing Plaintiff's company to work with and participate in U.S. General Services Administration program, preventing plaintiff's company from annual certification with U.S. Small Business Administration, preventing Plaintiff from locating and communicating with his children with fiduciary responsibilities,** and **reputational damage;** and s**evere emotional distress** to Plaintiff, due to his inability to access retirement funds, **financial hardship, preventing Plaintiff from visiting his physicians at University Medical Center and receive medical care, Preventing Plaintiff from conducting ongoing business relationship with University faculty and staff and students, preventing Plaintiff's company to work with and participate in U.S. General Services Administration program, preventing plaintiff's company from annual certification with U.S. Small Business Administration, preventing Plaintiff from locating and communicating with his children with fiduciary responsibilities,**

34. Plaintiff was **unable to access University services**, including those necessary for personal, company, academic, and professional needs.

### *Monell Claim - Systemic Failure at UMC:*

35. **Defendants' conduct, including retaliation, discriminatory treatment, and denial of due process, was part of a larger, systemic failure at UMC.** The University's **policies, practices, and customs** were deficient in ensuring that employees were properly trained and supervised in handling claims related to retirement benefits and constitutional rights.

36. **Defendant UMC's failure to discipline or train its employees**, including Defendant Lyman and UMC Police Officers Clifford, Berkert, and John Doe # 1 and Human Resources Officer John Doe # 2, demonstrates a **deliberate indifference** to Plaintiff's rights. This systemic failure caused Plaintiff's constitutional and legal rights to be violated, and highlights the broader pattern of misconduct at UMC.

37. **The actions of Defendants** were motivated by **retaliatory animus** towards Plaintiff for his exercise of rights under the First Amendment and discrimination based on his ethnicity, reflecting a systemic disregard for the protection of civil rights at UMC.

### *John Doe Defendants (Including HR and UMC Police Officers)*

### *John Doe 1 – UMC Police Officer:*

38. Plaintiff was unlawfully banned from the University campus by  UMC Police Officer, including an unknown individual UMC Police Officer John Doe # 1 who assisted in enforcing the unjust campus ban. This officer, along with others, was

involved in the unlawful exclusion of Plaintiff from accessing campus resources, including HR, medical facilities, **preventing Plaintiff's company to work with and participate in U.S. General Services Administration program, preventing plaintiff's company from annual certification with U.S. Small Business Administration, preventing Plaintiff from locating and communicating with his children with fiduciary responsibilities,** thereby violating Plaintiff's *First Amendment* rights to petition the government and access public services.

### *John Doe # 2 – UMC Human Resources Employee:*

39. Plaintiff was further harmed by the actions of **John Doe 2**, an employee within the **University of Missouri-Columbia Human Resources Department**, whose specific role in denying Plaintiff's retirement benefits remains unknown. It is believed that this individual, under the direction of **Defendant Cari Lyman**, participated in the wrongful denial of Plaintiff's retirement benefits by either contributing to the destruction of records, mismanaging Plaintiff's case, or assisting in the alteration of records regarding Plaintiff's employment history.

## *FURTHER STATEMENT OF FACTS AND VICTIM IMPACT*

### *Plaintiff's Continuing Efforts to Resolve the Issue:*

40. Following the events of **August 31, 2022**, and the initial ban from the UMC campus, Plaintiff continued to engage with UMC officials, hoping for a resolution. Despite numerous attempts to contact UMC representatives, including staff members such as **Shawn**, **Laura**, **Cari**, and **Rachel**, the University failed to provide any clarity on the situation.
41. On **October 11, 2023**, Plaintiff attempted to resolve the matter by reaching out directly to **Police Chief Wymer**, but his concerns were ignored, and the campus ban was inexplicably extended until **August 31, 2024**.

### *Lost Income from Business and Career Opportunities:*

42. As a result of the unlawful campus ban, Plaintiff's **business income** has been significantly impacted. His two businesses, which had been profitable for over **30 years**, generated an estimated **$10 million annually**. However, with the loss of access to UMC's resources and personnel, Plaintiff could no longer renew key **business certifications** that were essential for securing lucrative **Federal contracts**.
43. These lost opportunities, totaling millions of dollars in annual revenue, have caused a permanent shutdown of Plaintiff's businesses. Plaintiff's attempts to restart or recover his business income were thwarted by the continuing campus ban and lack of access to key UMC departments, as well as his inability to interact

with business partners and UMC faculty who had long been essential to his operations.

### *Plaintiff's Health and Family Impacts:*

44. Beyond the financial losses, Plaintiff's ability to access necessary **healthcare services** was severely impacted. As a resident of **Columbia, Missouri**, Plaintiff had relied on **University Medical Center** for ongoing medical care, but the campus ban restricted his access to healthcare professionals and services that were previously vital to his health and well-being.

    a. Furthermore, the ban prevented Plaintiff from addressing urgent **family matters** with his children, who are enrolled at UMC. This included the inability to manage **inheritance affairs** and other pressing **real estate matters** that involved properties both in the U.S. and abroad, resulting in severe emotional and logistical challenges for Plaintiff.

### *Ongoing Retaliation and Lack of Accountability:*

45. As of **November 2023**, Plaintiff was informed by **Officer Beckert** that the campus ban would continue through **August 2024**, despite Plaintiff having **no record of any violations** or inappropriate behavior during his interactions with UMC. This continued **retaliatory conduct** by the University underscores the lack of transparency and accountability in the actions taken against Plaintiff, suggesting that the ban was imposed arbitrarily and without any legal justification.

### *Loss of Access to UMC Campus Resources and Community:*

46. Plaintiff's exclusion from the **UMC campus** has not only impacted his ability to run his businesses but also deprived him of participation in important **community events** and **academic forums**. As an alumnus, Plaintiff had a longstanding relationship with the University and regularly participated in **reunions**, **sports events**, and **public forums**. The campus ban has severed these vital connections, which has had lasting emotional and professional effects on Plaintiff.

47. Plaintiff has exhausted all administrative remedies under the Missouri Human Rights Act and received a right to sue letter, a copy of which is attached as **Exhibit A** and incorporated herein by reference as if stated fully herein.

48. Plaintiff has exhausted his administrative remedies under Title VII of the Civil Rights Act of 1964 and received a right to sue letter from the U.S. Equal Employment Opportunity Commission (EEOC), a copy of which is attached as **Exhibit B** and incorporated herein by reference as if stated fully herein.

49. Plaintiff has made a formal demand for settlement, a copy of which is attached as **Exhibit C** and incorporated herein by reference as if stated fully herein.

*Sovereign Immunity and Insurance Coverage:*

50. Plaintiff asserts that Defendants are subject to liability for the claims alleged in this complaint, despite any assertion of sovereign immunity, due to the existence of insurance coverage that does not explicitly reserve sovereign immunity. In accordance with applicable Missouri law, the availability of such insurance constitutes a waiver of sovereign immunity, and Defendants may not invoke sovereign immunity as a defense in this case.

# V. CLAIMS FOR RELIEF

## COUNT I
## VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### First Amendment Violation for Retaliation for Asserting a Constitutional Right
**(Defendants Cari Lyman, Chief Brian Weimer, UMC Police Officers Clifford, Berkert and John Doe #1 and UMC Human Resources Officer John Doe # 2)**

51. Plaintiff incorporates by reference the facts set forth in paragraphs 1 through 50 as though fully set forth herein.

52. Plaintiff's had a protected property interest in his retirement benefits under the University of Missouri-Columbia (UMC) retirement plan. Plaintiff had been employed by UMC for over seven years and was entitled to retirement benefits as a result of his service. The right to these benefits constitutes a constitutionally protected property interest under the 14th Amendment's Due Process Clause.

53. On **August 31, 2022**, Plaintiff approached **Defendant Cari Lyman**, the Director of Human Resources at UMC, to initiate his retirement claim. During this meeting, Plaintiff was informed by Defendant Lyman that his employment records had been destroyed, and he was entitled, in one count to only 4.81 years and in another to only 4.75 years of service, not the full 7 years he had worked. Plaintiff was not provided with an explanation or opportunity to contest this finding, despite having substantial documentation to support his claim for the full seven years of service.

54. **Defendant Lyman's hostile and unprofessional actions** were arbitrary, as Plaintiff had worked seven years for UMC, and there was no valid justification for altering his work history or denying him his retirement benefits. **Defendant Lyman's failure to offer any meaningful process** to challenge this decision deprived Plaintiff of his **property interest in his retirement benefits** without due process of law.

*Due Process Rights Were Further Violated When Plaintiff Was Banned from Campus:*

55. After questioning the accuracy of the records, **Plaintiff was unlawfully banned** from the Human Resources office by an officer for one month.
56. This ban a few minutes later was **extended for an entire year by another officer,** without any valid cause or explanation, for the entire campus.
57. The UMC Police officers, under the direction of **Defendant Chief Brian Weimer**, were complicit in enforcing this variable ban from the HR office to the entire campus in a matter of a few minutes.
58. **Defendant UMC Police Officers Clifford and John Doe 1** imposed the variable ban from the HR office to the entire campus in a matter of a few minutes, without providing Plaintiff with any notice or opportunity to be heard.
59. Furthermore, the ban was extended for another year in **August 2023**, again without notice or a hearing, and in clear retaliation for Plaintiff asserting his legal rights related to his retirement benefits.
60. The campus ban also interfered with Plaintiff's ability to access public services, attend alumni events, and engage with UMC in his capacity as an alumnus and father of students at the University, and for business related activities.

*Defendants' Retaliatory Actions:*

61. Plaintiff asserts that the actions of **Defendants** were not only procedurally defective but also retaliatory in nature. After Plaintiff asserted his **legal right** to retirement benefits, Defendants imposed a series of actions that were retaliatory and discriminatory.
62. These actions included the **unlawful campus ban without cause**, which was an attempt to silence Plaintiff and prevent him from asserting his rights.
63. The **retaliatory nature** of Defendants' actions is evidenced by the **immediate banning** of Plaintiff from the campus following his inquiry about his benefits, enforcing the variable ban from the HR office to the entire campus in a matter of a few minutes, and the **subsequent extension** of the ban, again without cause, when Plaintiff continued to challenge the wrongful denial of his benefits.

*Deliberate Indifference to Plaintiff's Rights:*

64. **Defendant Cari Lyman, with her unprofessional misconduct,** knew or should have known that by denying Plaintiff his retirement benefits and failing to follow proper procedures, she was violating Plaintiff's **due process rights**. She failed to afford Plaintiff any meaningful opportunity to challenge the denial of benefits or to present evidence supporting his claim. **Defendant Cari Lyman extended her misconduct by prematurely requesting to summon three University police officers in advance**

Page **12** of **53**

65. **Defendant Chief Brian Weimer** and **UMC Police Officers Clifford, and Berkert and John Doe # 1,** in enforcing the campus ban, acted with **deliberate indifference** to Plaintiff's constitutional rights. He further made a false claim that the officers' bodycam had recorded the entire incident. But, suspiciously, the incident video was erased shortly thereafter.

66. The officers were aware or should have been aware that Plaintiff was being unlawfully banned from campus without notice or due process, yet they continued to make false claim and enforce this unconstitutional ban.

67. The actions of **Defendants** reflect a pattern of **deliberate indifference** to the constitutional rights of individuals seeking to access University services and those who assert their legal rights.

### *Procedural Due Process Standards:*

68. **The** *Fourteenth Amendment* guarantees that no person shall be deprived of life, liberty, or property without due process of law.

69. To violate procedural due process, the government must fail to provide an individual with a meaningful opportunity to be heard at a meaningful time and in a meaningful manner before depriving them of their property interest.

70. In this case, Defendants deprived Plaintiff of his property interest in his retirement benefits without providing any opportunity for Plaintiff to challenge the wrongful denial of benefits, and the subsequent unlawful variable ban from the entire campus.

71. Furthermore, the decision to ban Plaintiff from campus was imposed arbitrarily and without notice or hearing, for one month by one officer and a few minutes later was **extended for an entire year by another officer,** without any valid cause or explanation, further depriving him of his rights under the due process protections guaranteed by the *Fourteenth Amendment.*

72. **Defendant Cari Lyman,** as the Director of Human Resources at UMC, is responsible for processing and administering retirement claims and for overseeing personnel matters within the University's Human Resources Department. As detailed in the Statement of Facts, Defendant Lyman retaliated unprofessionally against Plaintiff by denying him access to his retirement benefits and failing to process his claim in accordance with UMC's policies and legal obligations.

73. **Defendant Chief Brian Weimer,** as the Chief of the UMC Police Department, oversees the actions of the UMC Police Officers and was involved in approving and implementing the unlawful campus ban against Plaintiff. **Defendant Chief Weimer** failed to intervene or prevent the retaliatory actions of UMC Police Officers, including the actions taken by **Officer Clifford and Berkert and John Doe # 1** and **John Doe # 2,** which resulted in Plaintiff being banned from the University campus. Defendant Chief Brian Weimer tried to cover up their wrongful act by falsely claiming that officers' bodycam had recorded the entire incident. But, suspiciously, erased the video a short time later.

74. **Defendant UMC Police Officer Clifford and  Officer Berkert and John Doe #
1 and Human Resource Officer John Doe # 2** were directly involved in the
retaliatory imposition of the campus-wide ban without cause, which restricted
Plaintiff's access to University facilities, public services, and academic resources.
The officers were acting under the direction and authority of Defendant Weimer
and were complicit in the unlawful actions taken against Plaintiff.

75. **Plaintiff's questioning of UMC's practices and his attempt to claim his
retirement benefits were protected First Amendment activities**. Plaintiff's
interactions with Defendant Lyman and UMC officials were peaceful, respectful,
and centered on asserting his legal rights, verifiable by his recording of the
incident.

76. **Defendants retaliated against Plaintiff for his exercise of these rights**. On
**August 31, 2022,** after Plaintiff challenged the denial of his retirement benefits
and pointed out discrepancies in the records regarding his employment history,
**Defendant Lyman summoned three UMC Police Officers,** including Officer
Clifford, and Berkert, to remove Plaintiff from the Human Resources office. The
officers informed Plaintiff that he was banned from the HR office for one month,
and a few minutes later they extended it to one year campus wide, **Defendant
Lyman extended this ban to a full campus-wide ban for one year.**

77. **Defendant Officer Clifford and Berkert, and other UMC Police officers** acted
with retaliatory animus when they imposed the campus-wide ban on Plaintiff.
When Plaintiff sought clarification, **Officer Clifford stated, "Because I said so,"**
which evidences the arbitrary and retaliatory nature of the ban without due
process. This ban was imposed without any legitimate, non-retaliatory reason and
was a direct consequence of Plaintiff's exercise of his rights to challenge UMC's
refusal to honor his retirement benefits.

78. **Plaintiff recorded the entire incident**, demonstrating that he did not act
disrespectfully or provocatively toward UMC officials or the UMC Police
Officers.

79. The recorded incident evidences that Plaintiff was unlawfully banned in retaliation
for his assertion of legal rights, and not because of any disruptive, or inappropriate
conduct; contrary to what defendant Chief Weimer had claimed.

80. **The actions of Defendants were retaliatory** and designed to punish Plaintiff for
his exercise of constitutional rights. The **ban from UMC campus** has caused
Plaintiff substantial harm, including severe emotional distress, reputational
damage, and financial hardship due to his inability to access University services,
educational facilities, and resources.

*Legal Standard for First Amendment Retaliation:*

81. To state a claim for retaliation under the *First Amendment*, Plaintiff must
demonstrate that:

    a. **Plaintiff engaged in constitutionally protected activity** (e.g., asserting a legal claim, speaking out on matters of public concern).

    b. **Plaintiff suffered an adverse action** by the government actor(s) that would likely deter a person of ordinary firmness from continuing to engage in protected activity.

    c. **There is a causal connection between the protected activity and the adverse action**.

    d. The retaliatory action was motivated by the plaintiff's exercise of his First Amendment rights.

82. **Plaintiff has met all the necessary elements** for a ***First Amendment*** retaliation claim.

83. Plaintiff engaged in protected activity by asserting his legal rights to claim retirement benefits. Defendants' actions—denying him benefits, imposing an unjustified campus-wide ban, and preventing him from accessing University services—constituted significant adverse actions.

84. Finally, there is a **clear causal connection** between Plaintiff's protected speech and the retaliatory actions taken against him, as evidenced by the timing of the ban and the absence of any legitimate justification for these actions.

85. There is a clearly established right under the First Amendment to petition the government for redress of grievances, which includes the right to seek assistance regarding benefits owed. Retaliating against Plaintiff for asserting this constitutional right constitutes a violation of his First Amendment protections.

86. Defendants acted with the requisite mental state to be held liable under **42 U.S.C. § 1983**, as they knew or should have known that retaliating against Plaintiff for exercising his constitutional rights would likely result in a violation of the First Amendment.

87. As a direct and proximate result of Defendants' unconstitutional actions, Plaintiff has suffered the following damages:

    a. **Loss of retirement benefits** that he is lawfully entitled to receive.

    b. **Emotional distress** caused by Defendants' retaliatory actions and the prolonged ban.

    c. **Financial hardship** due to the denial of access to his retirement benefits, and damage to his professional and personal relationships.

    d. **Preventing Plaintiff's company to work with and participate in U.S. General Services Administration program. Hence incurring financial losses and loss of seniority and experience and status in the Federal program.**

    e. **Preventing plaintiff's company from annual certification with U.S. Small Business Administration. Hence incurring business opportunities and participating in Federal projects.**

    f. **Preventing Plaintiff from locating and communicating with his children with fiduciary responsibilities.**

    g. **Reputational harm** from being banned from a public university campus for exercising his constitutional rights.

    h. **Punitive damages**, as Defendants acted with deliberate indifference, malicious intent, or gross negligence.

**WHEREFORE,** Plaintiff, Mehrdad Fotoohighiam, respectfully requests that the Court:

    a. Award Plaintiff compensatory damages in an amount to be determined at trial, including damages for emotional distress, reputational harm, and financial losses suffered as a result of Defendants' unlawful actions.

    b. Award punitive damages against the individual Defendants, including Defendants Cari Lyman, Chief Brian Weimer, Officer Clifford, and Berkert, and John Doe # 1 and John Doe # 2, for their malicious, retaliatory, and unlawful actions.

    c. Grant injunctive relief requiring UMC and its employees to take corrective actions to ensure that Plaintiff's rights are restored and that such retaliatory conduct does not continue in the future.

    d. Award Plaintiff attorney's fees, costs, and litigation expenses as allowed under **42 U.S.C. § 1988**.

    e. Award Plaintiff any and all statutory damages available under Missouri law and federal law.

    f. Grant any such other relief as the Court deems just and proper.

---

# COUNT II
# VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## Due Process Violation (14th Amendment)
[Failure to Provide *Due Process* in Retirement Claims and Banning from Campus]
(Defendants Cari Lyman, Chief Brian Weimer, UMC Police Officers Clifford, Berkert and John Doe # 1, and John Doe # 2)

88. Plaintiff incorporates by reference the facts set forth in paragraphs 1 through 87 as though fully set forth herein.

89. **Plaintiff had a protected property interest** in his retirement benefits under the University of Missouri-Columbia (UMC) retirement plan. Plaintiff had been employed by UMC for over seven years and was entitled to retirement benefits as a result of his service. The right to these benefits constitutes a **constitutionally protected property interest** under the ***Fourteenth Amendment's Due Process Clause***.

90. On **August 31, 2022**, Plaintiff approached **Defendant Cari Lyman**, the Director of Retirement and Human Resources at UMC, to initiate his retirement claim. During this meeting, Plaintiff was informed by Defendant Lyman that his

Page **16** of **53**

employment records had been destroyed, and he was entitled at one count to only 4.81, and at another count to only 4.75 years of service, not the full 7 years he had worked. Plaintiff was not provided with an explanation or opportunity to contest this finding, despite having substantial documentation to support his claim for the full seven years of service.

91. **Defendant Lyman's actions** were unprofessional and arbitrary, as Plaintiff had worked seven years for UMC, and there was no valid justification for altering his work history or denying him his retirement benefits. **Defendant Lyman's failure to offer any meaningful process** to challenge this decision deprived Plaintiff of his **property interest in his retirement benefits** without due process of law.

92. **Plaintiff's Due Process Rights Were Further Violated When Plaintiff Was Banned from Campus, without cause.**

93. Specifically, Defendants' retaliatory actions, including the unlawful campus ban, were a direct response to Plaintiff's repeated requests for his retirement records and his assertion of rights regarding his employment and business interests. The retaliation severely damaged Plaintiff's business ventures, including causing Plaintiff to miss out on millions of dollars in business opportunities.

94. The retaliatory nature of the ban from campus was further exacerbated by Defendants' failure to provide Plaintiff with access to necessary business contacts and resources, which were essential for Plaintiff's ongoing operations.

95. After questioning the accuracy of the records, **Plaintiff was unlawfully banned** from the Human Resources office for one month. In a few minutes, the ban was **extended for the whole campus and for an entire year** without any valid cause or explanation. The UMC Police officers, under the direction of **Defendant Chief Brian Weimer**, were complicit in enforcing this ban.

96. **Defendant UMC Police Officers** Clifford, Berkert and **John Doe # 1** imposed the ban without providing Plaintiff with any notice or opportunity to be heard; and no *due process*.

97. Furthermore, the ban was extended for another year in **August 2023**, again without cause or notice or a hearing, and in clear retaliation for Plaintiff asserting his legal rights related to his retirement benefits.

98. The campus-wide ban also interfered with Plaintiff's ability to access public services, attend alumni events, and engage with UMC in his capacity as an alumnus and father of students at the University.

99. Specifically, Defendants' retaliatory actions, including the unlawful campus ban, were a direct response to Plaintiff's repeated requests for his retirement records and his assertion of rights regarding his employment and business interests. The retaliation severely damaged Plaintiff's business ventures, including causing Plaintiff to miss out on millions of dollars in business opportunities.

100.     The retaliatory nature of the ban from campus was further exacerbated by Defendants' failure to provide Plaintiff with access to necessary business contacts and resources, which were essential for Plaintiff's ongoing operations.

### *Procedural Due Process Standards:*

101.    The *Fourteenth Amendment* guarantees that no person shall be deprived of life, liberty, or property without **due process of law**. To violate procedural due process, the government must fail to provide an individual with a **meaningful opportunity to be heard** at a meaningful time and in a meaningful manner before depriving them of their property interest.

102.    In this case, Defendants deprived Plaintiff of his property interest in his retirement benefits without providing any opportunity for Plaintiff to challenge the wrongful denial of benefits. Furthermore, the decision to ban Plaintiff from campus was imposed arbitrarily and without notice or a hearing, further depriving him of his rights under the **due process** protections guaranteed by the **14th Amendment**.

### *Defendants' Retaliatory Actions:*

103.    Plaintiff asserts that the actions of **Defendants** were not only procedurally defective but also retaliatory in nature. After Plaintiff asserted his **legal right** to retirement benefits, Defendants imposed a series of actions that were retaliatory and discriminatory. These actions included the **unlawful campus ban**, which was an attempt to silence Plaintiff and prevent him from asserting his rights.

104.    The **retaliatory nature** of Defendants' actions is evidenced by the **immediate banning** of Plaintiff from the campus following his inquiry about his benefits and the **subsequent extension** of the ban when Plaintiff continued to challenge the wrongful denial of his benefits.

### *Deliberate Indifference to Plaintiff's Rights:*

105.    **Defendant Cari Lyman** knew or should have known that by denying Plaintiff his retirement benefits and failing to follow proper procedures, she was violating Plaintiff's *due process* **rights**. She failed to afford Plaintiff any meaningful opportunity to challenge the denial of benefits or to present evidence supporting his claim.

106.    **Defendant Chief Brian Weimer** and **UMC Police Officers Clifford, Berkert and John Doe # 1**, in enforcing the campus ban, acted with **deliberate indifference** to Plaintiff's constitutional rights. The officers were aware or should have been aware that Plaintiff was being unlawfully banned from campus without notice or due process, yet they continued to enforce this unconstitutional ban, without cause.

107.    The actions of **Defendants** reflect a pattern of **deliberate indifference** to the constitutional rights of individuals seeking to access University services and those who assert their legal rights.

*Plaintiff's Harm and Damages:*

108.     As a direct and proximate result of the **Defendants' unconstitutional actions**, Plaintiff has suffered the following damages:

    a. **Loss of retirement benefits** that he is lawfully entitled to receive.

    b. **Emotional distress** caused by Defendants' retaliatory actions and the prolonged ban.

    c. **Financial hardship** due to the denial of access to his retirement benefits, and damage to his professional and personal relationships.

    d. **Preventing Plaintiff's company to work with and participate in U.S. General Services Administration program. Hence incurring financial losses and loss of seniority and experience and status in the Federal program.**

    e. **Preventing plaintiff's company from annual certification with U.S. Small Business Administration. Hence incurring business opportunities and participating in Federal projects.**

    f. **Preventing Plaintiff from locating and communicating with his children with fiduciary responsibilities.**

    g. **Reputational harm** from being banned from a public university campus for exercising his constitutional rights.

    h. **Punitive damages**, as Defendants acted with deliberate indifference, malicious intent, or gross negligence.

**WHEREFORE,** Plaintiff, **Mehrdad Fotoohighiam**, respectfully requests that the Court:

    a. Award Plaintiff **compensatory damages** in an amount to be determined at trial, including damages for emotional distress, financial hardship, and the loss of his retirement benefits.

    b. Award **punitive damages** against the individual Defendants, including **Cari Lyman**, **Chief Brian Weimer**, **Officer Clifford**, Officer Berker, **John Doe # 1**, and **John Doe # 2**, for their malicious, retaliatory, and unlawful actions.

    c. Grant **injunctive relief** requiring UMC and its employees to take corrective actions to restore Plaintiff's access to his retirement benefits and to prevent further unlawful conduct.

    d. Award Plaintiff **attorney's fees**, **costs**, and **litigation expenses** as allowed under **42 U.S.C. § 1988**.

    e. Award Plaintiff any and all **statutory damages** available under Missouri law and federal law.

    f. Grant any such other relief as the Court deems just and proper.

# COUNT III
## VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### *Fourth Amendment* – Unreasonable Search and Seizure
(Defendants UMC Police Officers Clifford, Berkert, and John Doe 1, Chief Brian Weimer)

109.     Plaintiff incorporates by reference the facts set forth in paragraphs 1 through 108 as though fully set forth herein.

110.     **Plaintiff's *Fourth Amendment* Rights Were Violated** when the University of Missouri-Columbia Police, under the direction of **Defendant Chief Brian Weimer, unlawfully banned Plaintiff from the University campus** without notice or explanation, and in the absence of any legitimate justification. The actions of **Defendants** resulted in an unreasonable restriction on Plaintiff's ability to access public property, constituting a **search and seizure** under the Fourth Amendment.

### *Unlawful Ban from Campus:*

111.     On **August 31, 2022**, after Plaintiff questioned the accuracy of his employment records and retirement benefits, **Defendant Cari Lyman** called UMC Police officers, including **Defendant UMC Police Officer Clifford, and John Doe # 1, and UMC Human Resource Officer John Doe # 2** who informed Plaintiff that he was banned from the Human Resources office for one month. A few minutes later the ban was extended to the entire campus for **one year** without any explanation or legal basis.

112.     The ban itself, along with the subsequent extension, deprived Plaintiff of his ability to access campus facilities, including medical services and alumni-related functions. This constitutes an unreasonable **search and seizure** under the Fourth Amendment, as Plaintiff was deprived of his rights to access public property and services without any justification or due process.

### *Unreasonable Seizure of Plaintiff's Right to Access University Facilities:*

113.     The University of Missouri-Columbia is a public institution, and as an alumnus of UMC, Plaintiff had a **right to access** University property and attend University events.

114.     This right was unlawfully revoked without due process or any reasonable justification.

115.     **Defendants' actions** in banning Plaintiff from campus amounted to a seizure of his constitutional rights.

Page **20** of **53**

116. The denial of Plaintiff's right to enter and use public facilities, including the ability to meet with university personnel and attend his children's activities at the University, was an **unreasonable seizure** of his rights.

### *Lack of Probable Cause or Legal Justification:*

117. The ban imposed on Plaintiff was done without **probable cause** or any lawful basis. At no point was Plaintiff presented with any evidence justifying the ban, nor was he given an opportunity to contest the ban before it was implemented.

118. **Defendant UMC Police Officers**, acting under the direction of **Defendant Chief Weimer**, imposed this unlawful ban despite having no legitimate basis for such action. The actions taken by **Defendants** were arbitrary and retaliatory, with no proper legal foundation, and they lacked the **probable cause** required to deprive Plaintiff of his access to University property. They further exasperated the situation by attempting to cover up and falsely claimed that the officers' bodycam had recorded the incident, as justification for their unlawful act.

### *Plaintiff's Harm and Damages:*

119. As a direct result of **Defendants' unlawful actions**, Plaintiff has suffered the following damages:

   a. **Loss of retirement benefits** that he is lawfully entitled to receive.

   b. **Emotional distress** caused by Defendants' retaliatory actions and the prolonged ban.

   c. **Financial hardship** due to the denial of access to his retirement benefits, and damage to his professional and personal relationships.

   d. **Preventing Plaintiff's company to work with and participate in U.S. General Services Administration program. Hence incurring financial losses and loss of seniority and experience and status in the Federal program.**

   e. **Preventing plaintiff's company from annual certification with U.S. Small Business Administration. Hence incurring business opportunities and participating in Federal projects.**

   f. **Preventing Plaintiff from locating and communicating with his children with fiduciary responsibilities.**

   g. **Reputational harm** from being banned from a public university campus for exercising his constitutional rights.

   h. **Punitive damages**: Plaintiff seeks punitive damages for the intentional and malicious conduct of the **individual Defendants**, particularly the actions of **Defendant Cari Lyman, Defendant Chief Brian Weimer**, and **Defendant Clifford and John Doe # 1**.

*Deliberate Indifference to Plaintiff's Rights:*

**120.**    **Defendants' actions** in banning Plaintiff from campus were done with **deliberate indifference** to Plaintiff's constitutional rights. At all times, **Defendant Cari Lyman, Defendant Chief Brian Weimer**, and **Defendant Clifford and John Doe 1** knew or should have known that their actions would deprive Plaintiff of his **right to access public property** and violate his Fourth Amendment rights.

**121.**    By imposing the ban and failing to provide Plaintiff with an opportunity to contest it or explain his position, Defendants acted with **deliberate indifference** to Plaintiff's legal rights, resulting in a violation of Plaintiff's *Fourth Amendment right* to be free from unreasonable searches and seizures.

*Policy and Practice:*

**122.**    The actions of **Defendants** were part of a **pattern or practice** of unlawful conduct at the University of Missouri-Columbia. **Defendant Chief Brian Weimer** and UMC Police officers, including **Clifford, Berkert** and **John Doe # 1**, regularly enforced such bans without adequate oversight or adherence to constitutional requirements.

**123.**    Furthermore, **Defendant Cari Lyman**, as the former Director of Retirement and Human Resources, and **Defendant John Doe # 2**, the UMC Human Resources officer involved in the wrongful denial of Plaintiff's retirement benefits, were complicit in allowing these actions to continue without any checks or balances. The failure to properly train and supervise the UMC Police and Human Resources personnel reflects a systemic failure within the University to respect individuals' constitutional rights, including the right to **access public facilities**.

**WHEREFORE,** Plaintiff prays for relief in excess of $75,000, and respectfully requests that the Court:

a. Award Plaintiff **compensatory damages** in an amount to be determined at trial, including damages for emotional distress, financial hardship, and the loss of his ability to access University property.

b. Award **punitive damages** against the individual Defendants, including **Cari Lyman, Chief Brian Weimer, Officer Clifford and John Doe # 1**, and **John Doe # 2**, for their intentional, retaliatory, and unlawful actions.

c. Grant **injunctive relief** requiring the University of Missouri-Columbia and its employees to **cease and desist** from unlawfully banning individuals from campus and from engaging in retaliatory conduct.

d. Award Plaintiff **attorney's fees**, **costs**, and **litigation expenses** as allowed under **42 U.S.C. § 1988**.

 **e.** Award Plaintiff any and all **statutory damages** available under Missouri law and federal law.

 **f.** Grant any such other relief as the Court deems just and proper.

---

# COUNT IV
## 42 U.S.C. § 1983
## DUE PROCESS VIOLATION UNDER THE FOURTEENTH AMENDMENT
### Denial of Retirement Benefits and Unlawful Campus Ban
**(Defendants Cari Lyman, Chief Brian Weimer, UMC Police Officers (Berkert, Clifford and John Doe # 1), and UMC Human Resources Officer John Doe # 2)**

*Disparate Treatment of Plaintiff:*

**124.** Plaintiff incorporates by reference the facts set forth in paragraphs 1 through 123 as though fully set forth herein.

*Entitlement to Retirement Benefits and Due Process Protections:*

**125.** Plaintiff **Mehrdad Fotoohighiam** was employed by the University of Missouri-Columbia ("UMC") for seven years, from 1977 to 1984. As a long-term employee, Plaintiff had a vested **entitlement** to retirement benefits under the UMC retirement plan, which provided such benefits to employees with more than five years of service.

**126.** Plaintiff's entitlement to retirement benefits is a **constitutionally protected property interest** under both federal law and UMC's policies. The University's retirement plan guarantees employees like Plaintiff, who have served for more than five years, the right to receive retirement benefits upon leaving or retiring from the institution.

**127.** The *Fourteenth Amendment's Due Process Clause* protects **property interests**, including retirement benefits, from arbitrary deprivation without proper notice and a meaningful opportunity to be heard. Plaintiff was never given an opportunity to contest the erroneous information regarding his years of service or the unlawful denial of his retirement benefits.

**128.** The **right to retirement benefits** was thus a **fundamental property interest** and Plaintiff was entitled to **procedural due process** before any denial or reduction of these benefits could occur.

**129.** Plaintiff's attempts to address this matter were met with **inaction** and **disregard** for his procedural rights. Despite his **repeated inquiries** and requests for assistance, **UMC Human Resources** and **Defendant Lyman** failed to provide him with any **meaningful response** or process to resolve the dispute, further depriving Plaintiff of his **right to due process** under the law.

Page <strong>23</strong> of <strong>53</strong>

### *The Unlawful Campus Ban and Violation of Liberty Interest:*

130.    In addition to denying Plaintiff his retirement benefits, **Defendant Lyman** took further action by calling **Three UMC Police Officers** to intervene when Plaintiff questioned the accuracy of his employment records. Plaintiff was informed that he was **banned from the Human Resources office for one month, and a few minutes later the ban was extended to a campus-wide ban for one year** without any lawful justification.

131.    **Defendant Chief Brian Weimer**, as the head of the University Police Department, was responsible for ensuring that campus bans were imposed lawfully and in accordance with the **University's policies** and **constitutional protections**.

132.    **The imposition of the campus ban**, which restricted Plaintiff's ability to access **public property**, specifically University facilities where he had longstanding professional ties, **constituted a deprivation of Plaintiff's liberty interest** in using public spaces. Plaintiff's **right to enter UMC facilities**, particularly as an alumnus of the University, was violated without any procedural due process.

133.    **Defendant UMC Police Officers** involved in enforcing the campus ban, including **Clifford, Berkert, and John Doe # 1 and John Doe # 2**, failed to provide Plaintiff with any notice or explanation for the ban, and Plaintiff was denied an opportunity to contest the decision before the ban was extended beyond the original one-month period.

### *The Clearly Established Right and Defendants' Knowledge:*

134.    The **right to procedural due process** in the protection of property interests and **liberty interests** was **clearly established** at the time of the events at issue. As early as the **1970s**, the United States Supreme Court and the Eighth Circuit Court of Appeals had held that a **public employee's entitlement to retirement benefits** constitutes a **protected property interest**, and that denial of such benefits without adequate due process violates the **Fourteenth Amendment**.

135.    Likewise, the **right to access public property**, such as the **University campus**, is also a **clearly established constitutional right**. The **right to due process before being deprived of such access** is enshrined in the *First, Fourth, and Fourteenth Amendments*, and is well established by case law.

136.    **Defendant Lyman**, as the Director of Human Resources, **knew or should have known** that Plaintiff was entitled to receive his full retirement benefits and that his rights to those benefits could not be denied without providing him with appropriate due process.

137.     Similarly, **Defendant Chief Brian Weimer** knew or should have known that **UMC Police Officers** were required to provide Plaintiff with **notice** and an opportunity to challenge the campus ban, and that an arbitrary ban would deprive Plaintiff of his **liberty interest** to access public facilities.

138.     **Defendants acted with deliberate indifference** to Plaintiff's constitutional rights when they failed to provide due process in the retirement claims and unlawfully banned him from the University campus. They knew that their actions would result in violations of Plaintiff's clearly established constitutional rights, yet they proceeded to act anyway, demonstrating a **conscious disregard** for Plaintiff's rights.

### *Defendants' Deliberate Indifference to Due Process Rights:*

139.     Defendants acted with **deliberate indifference** to Plaintiff's constitutional rights to both **retirement benefits** and **access to University property**. **Defendant Lyman's** failure to provide proper due process in addressing Plaintiff's retirement claim, and **Defendant Weimer's** failure to ensure proper training and oversight of **UMC Police Officers**, resulted in the unlawful deprivation of Plaintiff's rights.

140.     **Defendants** knew or should have known that their actions, including the **failure to process Plaintiff's retirement benefits** and the **imposition of an unjustified campus ban**, would likely lead to constitutional violations. Despite Plaintiff's clear attempts to seek redress, Defendants failed to act, demonstrating a **pattern of neglect** and **deliberate indifference** to Plaintiff's due process rights.

141.     The **failure of UMC Police officers** to inform Plaintiff of the reasons for his ban, or to provide him with an opportunity to challenge or contest the ban, reflected a **systemic breakdown** in UMC's policies regarding the protection of individual rights on campus. Similarly, **Defendant Lyman's** failure to follow appropriate procedures and provide a fair process for retirement claims demonstrates a larger failure within UMC's Human Resources operations.

### *The Broader Systemic Failure of UMC:*

142.     **The actions of Defendants** in this case reflect a broader **systemic failure** within UMC to properly train and supervise its employees and agents, including Human Resources personnel and campus police officers, regarding **constitutional due process protections**. These failures were not isolated to Plaintiff's case but represent a **pattern and practice** of disregarding due process rights and constitutional protections.

143.     **Defendants' repeated failures** to respond meaningfully to Plaintiff's inquiries, to provide him with the retirement benefits to which he was entitled, and to address the unlawful campus ban in a timely and appropriate manner, all demonstrate a **deliberate indifference** to Plaintiff's rights and to the rights of others similarly situated.

Page **25** of **53**

*Harm and Damages:*

144.     As a direct result of Defendants' **unconstitutional actions**, Plaintiff has suffered severe **financial harm**, including the **loss of retirement benefits** and the inability to plan for his future financial security. Plaintiff's access to **critical University resources**, such as **medical care** and **business opportunities**, has been denied due to the unlawful **campus ban**.

145.     In addition to the **financial harm**, Plaintiff has endured significant **emotional distress**, including **anxiety, humiliation, frustration**, and **loss of dignity**, resulting from Defendants' actions. The unlawful denial of benefits, coupled with the extended campus ban, has caused Plaintiff to suffer **long-term emotional and reputational harm**.

146.     Plaintiff has also suffered **reputational damage** within the academic and local communities due to the **unjust banishment** from the University campus, an action that has negatively affected Plaintiff's personal and professional relationships.

**WHEREFORE, Plaintiff Mehrdad Fotoohighiam** respectfully requests that the Court:

   a. Award Plaintiff **compensatory damages** for the harm suffered as a result of Defendants' unlawful actions, including **financial harm, emotional distress**, and **reputational damage**.

   b. Award Plaintiff **punitive damages** for Defendants' **willful, wanton**, and **deliberate indifference** to Plaintiff's rights.

   c. Award Plaintiff **pre- and post-judgment interest** at the highest rate allowed by law.

   d. Award Plaintiff **attorney's fees, costs of litigation**, and any other **statutory damages** as allowed under **42 U.S.C. § 1983**, the **Missouri Human Rights Act**, and other applicable laws.

   e. Grant any further relief that the Court deems just and proper.

---

# COUNT V
# VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## Equal Protection Violation (*Fourteenth Amendment*)
[Selective Enforcement or Discrimination in How Plaintiff Was Treated]
(Defendants Cari Lyman, Chief Brian Weimer, UMC Police Department, UMC Police Officers Clifford, Berkert and John Doe # 1, and UMC Human Resource Officer John Doe # 2)

*Disparate Treatment of Plaintiff:*

147.     Plaintiff incorporates by reference the facts set forth in paragraphs 1 through 146 as though fully set forth herein.

Page **26** of 53

148.    Plaintiff was subjected to discriminatory treatment compared to other similarly situated individuals.

149.    Specifically, **Plaintiff** was denied retirement benefits that he was lawfully entitled to, while other employees in similar circumstances were granted their benefits without issue. Furthermore, **Plaintiff** was arbitrarily banned from the UMC campus while others in similar situations were allowed continued access.

### *Denial of Retirement Benefits:*

150.    **Plaintiff** was denied his rightful retirement benefits despite other employees who had worked for the University for a similar amount of time receiving theirs without issue. **Plaintiff's** retirement file was allegedly "destroyed," but this justification was not applied to other employees in similar situations who were granted their benefits.

### *Campus Ban:*

151.    **Plaintiff** was subjected to an arbitrary and unlawful ban from the **UMC** campus, while other individuals, including current or former employees and visitors, who had not engaged in misconduct were allowed access. The ban imposed on **Plaintiff** appeared to be selective and was applied only to him, based on his attempts to assert his rights.

152.    **Plaintiff** was the subject of retaliatory and discriminatory conduct solely because of his exercise of constitutional rights, including his right to question the treatment he received from **Defendants**, and his attempt to exercise his right to retirement benefits.

### *Discriminatory Motive or Unequal Justification:*

### *No Legitimate Justification for Treatment:*

153.    **Defendants**, including **Chief Brian Weimer** and **UMC Police Officer Clifford, Berkert, and John Doe # 1**, failed to provide any valid or rational reason for imposing the campus ban on **Plaintiff**, much less a reason that justified discriminatory treatment.

154.    In contrast, others with similar grievances or issues (whether complaints or disputes with HR) were not subjected to such harsh and disproportionate treatment.

### *Extension of the Ban:*

155.    Even after the original one-month ban, it was unlawfully extended for another year without cause or adequate justification.

156.     **Plaintiff** had been treated differently from similarly situated individuals, and there was no legitimate reason for the extension of the ban.

### *Legal Analysis of Equal Protection Violation:*

157.     The *Equal Protection Clause* **of the** *14th Amendment* prohibits states from denying any person within their jurisdiction "the equal protection of the laws." It ensures that individuals in similar situations are treated alike and prohibits arbitrary or discriminatory treatment by the government based on classifications that lack a sufficient or legitimate reason.

158.     **Plaintiff's** claim is based on a theory of **selective enforcement** and/or a **class-of-one** violation of the *Equal Protection Clause* of the *Fourteenth Amendment*.

### *Type of Equal Protection Claim:*

159.     This claim is based on **selective enforcement** and/or a **class-of-one** violation of the *Equal Protection Clause* of the *Fourteenth Amendment*.

### *Class-of-One Theory:*

160.     **Plaintiff's** claim is further grounded in a **class-of-one** *Equal Protection* violation. Under this theory, an individual can assert a violation of equal protection even if they are not part of a specific protected class (e.g., race, gender, national origin). Instead, the claim argues that the government has irrationally treated the individual differently than others who are similarly situated and have engaged in similar conduct.

161.     **Here, Plaintiff** was treated differently from other individuals who were similarly situated—other employees at **UMC** who were entitled to retirement benefits or who had grievances with **HR**, and other individuals who had no legitimate reason to be banned from campus.

162.     **The Defendants' actions** in imposing an unjustified campus ban on **Plaintiff** and refusing to provide him with retirement benefits were arbitrary and irrational, particularly in light of the absence of justification for their differential treatment.

163.     **Plaintiff** was treated differently from others similarly situated.

164.     The difference in treatment was without a rational basis and violated **Plaintiff's** *Fourteenth Amendment* rights to equal protection.

165.     If the claim is not a class-of-one theory but rather one of **selective enforcement**, it could also fall under *Equal Protection* violations.

166.     Selective enforcement occurs when individuals are subject to unequal treatment under the law or governmental authority for the same or similar conduct. **Plaintiff**, in this case, was denied benefits and subjected to a campus ban, while

others similarly situated (who had worked for UMC the same amount of time, or who had filed similar complaints) were not treated similarly.

167.      Other individuals who had similar grievances or employment issues were not banned from campus or denied their retirement benefits,

168.      The unequal enforcement is due to some discriminatory motive or improper factor (e.g., Plaintiff's outspoken complaints or the exercise of his constitutional rights).

169.      At the time of the conduct complained of, **Plaintiff had a clearly established right** under the ***Fourteenth Amendment*** to be free from discrimination and to receive equal protection under the law. The ***Equal Protection Clause*** applies not just to classifications based on race or gender but also to arbitrary or irrational government actions that treat similarly situated individuals differently without justification.

170.      The right to be free from discrimination and to be treated equally is clearly established in case law and was well-known to Defendants.

### Selective Enforcement:

171.      If the claim is not a class-of-one theory but rather one of **selective enforcement**, it would also fall under **Equal Protection** violations.

172.      **Selective enforcement** occurs when individuals are subject to unequal treatment under the law or governmental authority for the same or similar conduct. In this case, **Plaintiff** was denied benefits and subjected to a campus ban, while others similarly situated (who had worked for **UMC** the same amount of time, or who had filed similar complaints) were not treated similarly.

173.      Others who had similar grievances or employment issues were not banned from campus or denied their retirement benefits.

174.      The unequal enforcement is the result of some discriminatory motive or improper factor, such as **Plaintiff's** outspoken complaints or his exercise of his constitutional rights.

175.      **At the time of the conduct** complained of, **Plaintiff** had a clearly established right under the ***Fourteenth Amendment*** to be free from discrimination and to receive equal protection under the law. The ***Equal Protection Clause*** applies not just to classifications based on race or gender, but also to arbitrary or irrational government actions that treat similarly situated individuals differently without justification.

176.      **The right to be free from discrimination** and to be treated equally is clearly established in case law and was well-known to **Defendants**.

### Mental State and Knowledge:

177.      Defendants acted with the requisite mental state to be held liable under **42 U.S.C. § 1983**. They knew or should have known that their actions in selectively

enforcing policies (denying benefits, banning Plaintiff from campus) without justification or rational basis would result in a violation of Plaintiff's *Fourteenth Amendment* right to equal protection

178.  .  **Defendants' Conduct** was not only discriminatory, but it was also arbitrary and unreasonable given the facts at hand, demonstrating an understanding (or deliberate disregard) that such conduct would likely result in a violation of Plaintiff's rights.

### *Monell Claim and Systemic Failure:*

179.  **Plaintiff** asserts that **Defendants' actions** were not isolated incidents but part of a broader, systemic failure of policies, practices, and customs at **UMC**. Specifically, **UMC** failed to properly train, supervise, and discipline its employees to prevent arbitrary and discriminatory actions such as those suffered by **Plaintiff**.

180.  **Defendants**, acting under the authority of **UMC**, had a **policy, custom, or practice** of selectively enforcing rules and policies in a discriminatory manner. **UMC**'s failure to implement adequate training and supervision led to the unlawful treatment of **Plaintiff**.

181.  The **Defendants' failure to act** was a result of **deliberate indifference** to **Plaintiff's** constitutional rights. The **Defendants**, including **Chief Weimer**, **Cari Lyman**, and the officers involved in **Plaintiff's** case, were aware or should have been aware of the systemic deficiencies in **UMC**'s policies and practices.

182.  **Defendants' failure** to act, despite knowledge of the unconstitutional conduct, constitutes deliberate indifference and represents a policy or practice of tolerating violations of constitutional rights.

183.  **UMC** had a duty to ensure that its employees, including **Human Resources** personnel and **Police Officers**, were properly trained to comply with constitutional rights, yet failed to do so, leading to the violations at issue in this case.

### *Causation and Damages:*

184.  As a direct and/or proximate result of Defendants' actions, **Plaintiff was damaged**, including but not limited to:
    a. **Loss of retirement benefits** that he is lawfully entitled to receive.
    b. **Emotional distress** caused by Defendants' retaliatory actions and the prolonged ban.
    c. **Financial hardship** due to the denial of access to his retirement benefits, and damage to his professional and personal relationships.
    d. **Preventing Plaintiff's company to work with and participate in U.S. General Services Administration program. Hence incurring financial losses and loss of seniority and experience and status in the Federal program.**

Page **30** of **53**

    e.   **Preventing plaintiff's company from annual certification with U.S. Small Business Administration. Hence incurring business opportunities and participating in Federal projects.**

    f.   **Preventing Plaintiff from locating and communicating with his children with fiduciary responsibilities.**

    g.   **Reputational harm** from being banned from a public university campus for exercising his constitutional rights.

    h.   **Punitive damages**, as Defendants acted with deliberate indifference, malicious intent, or gross negligence.

185.    Plaintiff would not have suffered these damages but for Defendants' arbitrary and discriminatory actions, and the differential treatment Plaintiff received is the direct cause of his harm.

**WHEREFORE,** Plaintiff prays for relief as follows:

    a.   Compensatory damages for the emotional distress, reputational harm, and financial harm caused by Defendants' conduct;

    b.   Punitive damages for Defendants' intentional misconduct and willful violation of Plaintiff's constitutional rights;

    c.   Injunctive relief requiring Defendants to cease their discriminatory practices and implement proper training and supervision of employees;

    d.   Attorney's fees, costs, and expenses as allowed by law;

    e.   Any other relief that the Court deems just and proper, including any available statutory or other damages, in an amount exceeding $75,000, as proven at trial.

# COUNT VI
## Missouri Human Rights Act (MHRA) – Employment Discrimination

[Discrimination and Retaliation in Violation of MHRA]

**(Defendants Cari Lyman, Chief Brian Weimer, UMC Police Department, UMC Police Officers Clifford, Berkert and John Doe # 1; and UMC Human Resource Officer John Doe # 2)**

### *Failure to Provide Retirement Benefits:*

186.    Plaintiff incorporates by reference the facts set forth in paragraphs 1 through 185 as though fully set forth herein.

187.    This action arises from the violation of **Plaintiff's rights** under the **Missouri Human Rights Act (MHRA)**, Mo. Rev. Stat. § 213.010 et seq., and seeks to redress **discriminatory** and **retaliatory actions** taken by **Defendants**. Specifically, **Plaintiff** alleges that he was **denied retirement benefits**, subjected to an **unlawful campus ban**, and retaliated against for engaging in **protected**

**activities** such as asserting his rights and raising complaints related to his employment.

### *Discriminatory and Retaliatory Treatment:*

188.    Plaintiff was a **long-term employee** of the University of Missouri-Columbia (UMC), having worked in various departments for over **30 years**. During this time, Plaintiff never faced disciplinary action or denial of benefits until he asserted his constitutional rights, including filing complaints about his treatment and his **retirement benefits**.

189.    **Defendant Cari Lyman**, in her capacity as the **Director of Retirement and Human Resources at UMC**, was directly involved in the **unlawful denial** of Plaintiff's **retirement benefits**. In contrast, other employees in similar positions, who had worked for similar lengths of time at the University, were granted their benefits without incident.

190.    Upon information and belief, Plaintiff's **retirement file** was claimed to have been "destroyed" by UMC. However, no similar claims of destroyed files were made regarding other employees, further showing discriminatory treatment based on Plaintiff's exercise of his **constitutional rights**.

191.    Plaintiff was **subjected to an arbitrary and unlawful campus ban**, despite having **no prior incidents** of misconduct or violation of campus policies. This ban was selectively applied, as other employees and visitors with similar grievances or who had engaged in similar activities were not banned from campus.

192.    The **campus ban** was **extended for an additional year** without **any legitimate justification**. Other employees with similar complaints or grievances were not subjected to such a harsh and prolonged sanction, indicating a pattern of **discriminatory enforcement** against Plaintiff.

### *Discriminatory Intent and Retaliation:*

193.    Defendants' actions were not just isolated instances but part of a systematic pattern of discrimination and retaliation. Plaintiff's complaints about his retirement benefits and his assertive engagement in advocating for his rights were the catalyst for the retaliatory measures taken against him, including the denial of benefits and the unjust campus ban.

194.    Plaintiff's experience reflects broader discriminatory practices within the UMC Human Resources Department and University Police Department. These departments, under the direction of Defendants Lyman and Weimer, failed to adequately address Plaintiff's grievances, particularly after he raised complaints about his retirement benefits and the unfair treatment he experienced.

195.    Defendants' retaliatory actions were not only based on Plaintiff's assertion of constitutional rights, but they were also in direct response to Plaintiff's efforts to complain about unfair employment practices and his treatment under the

University's policies. The denial of benefits, the unwarranted campus ban, and ongoing retaliation are directly linked to Plaintiff's protected activities under the MHRA, including his right to seek redress for discriminatory treatment.

### *Failure to Train, Supervise, and Enforce Anti-Discrimination Policies:*

196.     At the heart of the violations in this case is the **systemic failure** of **UMC** to properly train and supervise its employees, including **Defendants Lyman, Weimer**, and other **UMC HR and Police Department officials**, in recognizing and addressing issues of **discrimination** and **retaliation**.

197.     **UMC's policies and practices** regarding **retirement benefits**, **campus access**, and **handling employee grievances** were deficient, both in theory and in practice. There was a failure to adequately train staff on the **proper procedures** for addressing **employment discrimination** and **retaliation**, which led to Plaintiff being subjected to **arbitrary and discriminatory treatment**.

198.     Furthermore, the **lack of meaningful accountability** within UMC for such misconduct allowed these discriminatory practices to persist. Despite Plaintiff raising concerns about **discriminatory treatment** in good faith, **UMC's failure to investigate or address** these concerns facilitated the **unjust denial of benefits** and the **unlawful campus ban**.

### *Legal Framework and Violation of Plaintiff's Rights:*

199.     **The Missouri Human Rights Act (MHRA)** provides that it is an unlawful employment practice for any employer to discriminate against an employee on the basis of race, color, religion, national origin, sex, disability, or **age**, and to retaliate against an employee for **asserting their rights** under the Act, including seeking redress for discriminatory actions.

200.     The **Equal Protection Clause** of the *Fourteenth Amendment* and Missouri state law prohibit **discriminatory treatment** in public employment. **Defendants' actions**, including the **denial of retirement benefits** and **arbitrary variable campus ban**, constitute violations of these rights under the MHRA because they were motivated by **Plaintiff's protected conduct** (e.g., asserting his rights, filing complaints about discrimination, etc.), rather than any legitimate basis for such actions.

201.     **Defendants acted with discriminatory intent**, and their **retaliatory actions**—which included the denial of benefits and the **unlawful variable ban**—were directly linked to Plaintiff's **protected activities**. These actions were **intentional, malicious, and taken with the knowledge** that they would cause Plaintiff harm.

### Broader Systemic Failure and Monell Liability:

202.        **UMC's actions were not just the result of individual wrongdoing**, but rather, were **systemic failures** rooted in the institution's **policies**, **training deficiencies**, and lack of oversight. The failure of **UMC's leadership**, including **Defendants Lyman and Weimer**, to prevent or remedy **discrimination and retaliation** constitutes **a failure of the institution itself** to prevent such violations from occurring.

203.        **Plaintiff's claims** also reflect a ***Monell*-type violation**, in which the **University** was **deliberately indifferent** to the need for proper training and supervision. This **failure to act** enabled the discriminatory and retaliatory treatment Plaintiff suffered, and this **systemic failure** has affected not only Plaintiff, but potentially other employees at UMC.

### Causation and Damages:

204.        As a direct and proximate result of **Defendants' actions**, Plaintiff has suffered significant harm, including but not limited to:
   a. **Loss of retirement benefits** that he is lawfully entitled to receive.
   b. **Emotional distress** caused by Defendants' retaliatory actions and the prolonged ban.
   c. **Financial hardship** due to the denial of access to his retirement benefits, and damage to his professional and personal relationships.
   d. **Preventing Plaintiff's company to work with and participate in U.S. General Services Administration program. Hence incurring financial losses and loss of seniority and experience and status in the Federal program.**
   e. **Preventing plaintiff's company from annual certification with U.S. Small Business Administration. Hence incurring business opportunities and participating in Federal projects.**
   f. **Preventing Plaintiff from locating and communicating with his children with fiduciary responsibilities.**
   g. **Reputational harm** from being banned from a public university campus for exercising his constitutional rights.
   h. **Punitive damages**, as Defendants acted with deliberate indifference, malicious intent, or gross negligence.
   i. **Loss of rights**: Plaintiff has been deprived of his **right to equal treatment**, **right to access public property**, and **right to participate in the educational functions** of the University.

205.        Plaintiff's damages were a direct result of **Defendants' unlawful actions**, including **discriminatory treatment**, **retaliation**, and the **systemic failures** within UMC's internal policies and practices.

Page **34** of **53**

**WHEREFORE, Plaintiff prays for relief as follows:**

    **a.** . **Compensatory damages** in an amount to be determined at trial;

    **b.** **Punitive damages** to deter future violations of the Missouri Human Rights Act and other applicable laws;

    **c.** **Attorney's fees** and **costs** incurred in bringing this action, as allowed under applicable statutes;

    **d.** **Any other relief** the Court deems just and proper.

---

# COUNT VII
## Missouri Human Rights Act (MHRA) – Retaliation
**(Defendants Cari Lyman, Chief Brian Weimer, UMC Police Department, UMC Police Officers Clifford, Berkert, and John Doe # 1; and UMC Human Resource Officer John Doe #2)**

**206.** Plaintiff, Mehrdad Fotoohighiam, incorporates by reference the facts set forth in Paragraphs 1 through 205 of this Complaint as though fully set forth herein.

**207.** This claim arises from the unlawful retaliation Plaintiff suffered in violation of the **Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.010 et seq.**, which prohibits employers from retaliating against employees for engaging in protected activities, including the exercise of their rights under the MHRA, such as asserting complaints of discrimination or participating in proceedings under the Act.

### *Plaintiff Engaged in Protected Activities:*

**208.** Plaintiff, a long-term employee of the University of Missouri-Columbia (UMC), asserted his rights under the **MHRA** by raising concerns about his retirement benefits and his treatment by UMC in violation of applicable policies and practices.

**209.** Plaintiff filed complaints related to the denial of retirement benefits, the destruction of his retirement file, and the unlawful restrictions placed on his campus access. These activities were conducted to exercise his rights under the MHRA, and Plaintiff was engaged in protected conduct when raising these issues.

**210.** Plaintiff's efforts to assert his constitutional rights, including his right to equal treatment, retirement benefits, and to address discriminatory treatment, were protected activities under the MHRA.

*Defendants' Retaliatory Actions:*

211.    Following Plaintiff's complaints and assertion of his rights, Defendants retaliated against Plaintiff by subjecting him to a discriminatory campus ban, denying him retirement benefits, and imposing unwarranted restrictions on his access to campus.

212.    Specifically, Defendant Cari Lyman, in her role as Director of Human Resources, was responsible for the retaliatory denial of Plaintiff's retirement benefits. Defendant Chief Brian Weimer of the University of Missouri-Columbia Police Department oversaw the unlawful campus ban placed on Plaintiff. Defendants UMC Police Officers Clifford, Berkert, and John Doe #1 and UMC Human Resource Officer John Doe #2 further participated in the enforcement of this retaliatory treatment.

213.    The campus ban was imposed without cause and extended for a year, even after Plaintiff had made good-faith efforts to resolve his issues through appropriate channels, including his attempts to address the destruction of his retirement file. This action was designed to punish Plaintiff for exercising his rights under the MHRA.

214.    Defendants' actions were specifically motivated by a desire to retaliate against Plaintiff for asserting his rights and engaging in protected conduct, including filing grievances and raising issues of discriminatory treatment related to his employment at UMC.

### *Legal Framework for Retaliation Under MHRA:*

215.    Under the **Missouri Human Rights Act, Mo. Rev. Stat. § 213.070**, it is unlawful for any employer to retaliate against an employee for opposing unlawful discriminatory practices, filing a complaint with the Missouri Commission on Human Rights, or participating in any related proceedings.

216.    The MHRA prohibits retaliation not only for directly asserting discrimination claims but also for engaging in conduct that could be reasonably understood as opposing unlawful practices. This includes complaints about unfair treatment, discriminatory benefits practices, or any activity that seeks to address or correct discriminatory conduct.

217.    Plaintiff's complaints about the unlawful destruction of his retirement file, the discriminatory denial of his benefits, and his efforts to contest his treatment were all protected activities under the MHRA.

*Retaliation by Defendants:*

**218.** Defendants were fully aware that Plaintiff had asserted his rights and engaged in protected conduct by filing complaints related to his retirement benefits and discriminatory treatment.

**219.** Defendants acted with retaliatory intent when they subjected Plaintiff to discriminatory and retaliatory actions, including:

    **a. The arbitrary and unlawful campus ban:** This action was taken with no legitimate reason, and its purpose was to punish Plaintiff for seeking redress for his mistreatment.

    **b. The denial of Plaintiff's retirement benefits:** Defendants acted in retaliation by claiming that Plaintiff's retirement file had been "destroyed," which caused significant financial harm and was in stark contrast to how similarly situated employees were treated.

    **c. The extension of the campus ban:** Even after an initial one-month ban, Plaintiff was subjected to an additional year-long ban, further demonstrating retaliatory animus in response to his complaints and protected conduct.

*Causation and Damages:*

**220.** As a direct and proximate result of Defendants' retaliatory actions, Plaintiff has suffered significant harm, including:

    **a. Loss of retirement benefits** that he is lawfully entitled to receive.

    **b. Emotional distress** caused by Defendants' retaliatory actions and the prolonged ban.

    **c. Financial hardship** due to the denial of access to his retirement benefits, and damage to his professional and personal relationships.

    **d. Preventing Plaintiff's company to work with and participate in U.S. General Services Administration program. Hence incurring financial losses and loss of seniority and experience and status in the Federal program.**

    **e. Preventing plaintiff's company from annual certification with U.S. Small Business Administration. Hence incurring business opportunities and participating in Federal projects.**

    **f. Preventing Plaintiff from locating and communicating with his children with fiduciary responsibilities**

    **g. Reputational harm** from being banned from a public university campus for exercising his constitutional rights.

    **h. Punitive damages**, as Defendants acted with deliberate indifference, malicious intent, or gross negligence.

221.     Plaintiff's damages were a direct result of Defendants' unlawful retaliatory actions, which included the denial of his benefits, the extension of the campus ban, and other retaliatory treatment. These actions were taken with the intent to punish Plaintiff for asserting his constitutional rights.

### *Systemic Retaliation and Failure to Train:*

222.     The retaliatory actions described above were not isolated incidents but part of a systemic pattern of retaliation at UMC, fostered by the failure of Defendants Lyman, Weimer, and other supervisory officials to prevent such unlawful conduct.

223.     UMC's failure to train and supervise its employees on handling complaints and addressing issues of retaliation and discrimination directly contributed to the retaliatory treatment Plaintiff suffered. This failure reflects a deliberate indifference to Plaintiff's rights and created a hostile work environment where employees were punished for asserting their rights.

**WHEREFORE,** Plaintiff prays for relief as follows:
   a.   Compensatory damages in an amount to be determined at trial;
   b.   Punitive damages to deter future retaliation against employees asserting their rights under the Missouri Human Rights Act;
   c.   Attorney's fees and costs incurred in bringing this action, as allowed under applicable statutes;
   d.   Any other relief the Court deems just and proper.

---

# COUNT VIII
## Title VII – Retaliation for Exercising Constitutional Rights and National Origin
**(Against Defendants University of Missouri, UMC Police Department, Cari Lyman, Officer Clifford, Berkert, and John Doe # 1, and UMC Human Resource Officer John Doe # 2 )**

224.     Plaintiff incorporates by reference the facts set forth in paragraphs 1 through 223 as though fully set forth herein.

225.     Plaintiff, Mehrdad Fotoohighiam, is a member of a protected class under **Title VII of the Civil Rights Act of 1964** due to his national origin (Iranian descent).

226.     Plaintiff engaged in protected activities by asserting his First Amendment rights to challenge the unlawful denial of his retirement benefits and by seeking to resolve his retirement claim. Specifically, Plaintiff questioned the accuracy of his retirement records and demanded access to the benefits he had earned through his seven years of service at the University of Missouri-Columbia.

227.     In response to Plaintiff's protected activity, Defendants retaliated by taking the following adverse actions against Plaintiff:

Page **38** of **53**

    **a.** Denial of Plaintiff's retirement benefits, despite his entitlement under the University's retirement plan.

    **b.** Imposition of an unlawful one-year campus-wide ban, preventing Plaintiff from accessing University property or services, including meetings with Human Resources and other essential functions. The ban was later extended without justification.

    **c.** Failure to respond meaningfully to Plaintiff's inquiries regarding his retirement claim and his exclusion from campus, including ignoring his attempts to communicate with Human Resources and University Police.

**228.** Defendants' retaliatory actions were motivated by Plaintiff's exercise of his constitutional rights (challenging the denial of his retirement benefits and asserting his rights to access public services) and his national origin (Iranian descent), which further violated **Title VII**'s prohibition against retaliation based on race, color, religion, sex, or national origin.

**229.** As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered damages, including but not limited to:

    **a.** **Loss of retirement benefits** that he is lawfully entitled to receive.

    **b.** **Emotional distress** caused by Defendants' retaliatory actions and the prolonged ban.

    **c.** **Financial hardship** due to the denial of access to his retirement benefits, and damage to his professional and personal relationships.

    **d.** **Preventing Plaintiff's company to work with and participate in U.S. General Services Administration program. Hence incurring financial losses and loss of seniority and experience and status in the Federal program.**

    **e.** **Preventing plaintiff's company from annual certification with U.S. Small Business Administration. Hence incurring business opportunities and participating in Federal projects.**

    **f.** **Preventing Plaintiff from locating and communicating with his children with fiduciary responsibilities.**

    **g.** **Reputational harm** from being banned from a public university campus for exercising his constitutional rights.

    **h.** **Punitive damages**, as Defendants acted with deliberate indifference, malicious intent, or gross negligence.

**230.** Defendants' actions were carried out with knowledge that their conduct was unlawful, and they acted with malice or with a deliberate indifference to Plaintiff's rights under **Title VII**.

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

    **a.** **Compensatory damages** for the emotional distress, financial harm, and reputational damage Plaintiff has suffered, in an amount to be determined at trial, in excess of $75,000;

b. **Punitive damages** to punish Defendants and deter future discrimination;

c. **Attorney's fees, costs**, and any other relief available under **Title VII**;

d. **Injunctive relief** ordering Defendants to cease and desist from further discriminatory practices, to provide Plaintiff his rightful retirement benefits, and to restore Plaintiff's rights to access public services and property at the University;

e. Any other relief deemed just and proper by the Court.

---

# COUNT IX
## Title VII Violation– National Origin Discrimination
### [Denial of Retirement Benefits Based on National Origin]
(Against Defendants University of Missouri, UMC Police Department, Cari Lyman, Officers Clifford, Berkert, and John Doe # 1 and UMC Human Resource Officer John Doe # 2 )

231.   Plaintiff incorporates by reference the facts set forth in paragraphs 1 through 230 as though fully set forth herein.

232.   Plaintiff, **Mehrdad Fotoohighiam**, is a member of a **protected class** under **Title VII** based on his **national origin** (Iranian descent).

233.   Defendants' actions in denying Plaintiff his rightful **retirement benefits** and the subsequent retaliatory treatment were influenced by **discriminatory animus** based on Plaintiff's **national origin**.

234.   **Plaintiff was entitled to retirement benefits** under the University of Missouri-Columbia's retirement plan due to his **seven years of service** at UMC. Despite this entitlement, Defendants, including **Cari Lyman** and the **UMC Police Department**, unlawfully denied Plaintiff access to his retirement benefits and misrepresented the duration of his employment.

235.   **Plaintiff's national origin** (Iranian descent) was a **motivating factor** in Defendants' decision to deny Plaintiff his retirement benefits, subjecting him to **discriminatory treatment** compared to employees of non-Iranian descent.

236.   **Defendants' discriminatory actions** included the following:

a. **False representation of Plaintiff's employment history**, stating that Plaintiff at one count had only worked 4.81 years and at another count had worked only 4.75 years when in fact he had worked seven years at UMC.

b. The **unlawful ban** imposed upon Plaintiff, which prevented him from accessing essential services and pursuing his retirement claim.

c. The **failure to provide due process** in addressing Plaintiff's retirement claim, despite his entitlement and the long duration of his employment.

237.   As a **direct and proximate result** of Defendants' unlawful conduct, Plaintiff has suffered **damages**, including:

a. **Loss of retirement benefits** that he is lawfully entitled to receive.

b. **Emotional distress** caused by Defendants' retaliatory actions and the prolonged ban.
c. **Financial hardship** due to the denial of access to his retirement benefits, and damage to his professional and personal relationships.
d. **Preventing Plaintiff's company to work with and participate in U.S. General Services Administration program. Hence incurring financial losses and loss of seniority and experience and status in the Federal program.**
e. **Preventing plaintiff's company from annual certification with U.S. Small Business Administration. Hence incurring business opportunities and participating in Federal projects.**
f. **Preventing Plaintiff from locating and communicating with his children with fiduciary responsibilities.**
g. **Reputational harm** from being banned from a public university campus for exercising his constitutional rights.
h. **Punitive damages**, as Defendants acted with deliberate indifference, malicious intent, or gross negligence.

238.  **Defendants' actions** were carried out with **discriminatory intent**, based on Plaintiff's **national origin**, in violation of **Title VII**.

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

a. **Compensatory damages** for the emotional distress, financial harm, and reputational damage Plaintiff has suffered, in an amount to be determined at trial, in excess of $75,000.
b. **Punitive damages** to punish Defendants and deter future discrimination;
c. **Attorney's fees**, **costs**, and any other relief available under **Title VII**;
d. **Injunctive relief** ordering Defendants to cease and desist from further discriminatory practices, to provide Plaintiff his rightful retirement benefits, and to restore Plaintiff's rights to access public services and property at the University;
e. Any other relief deemed just and proper by the Court.

---

## COUNT X
### Tortious Interference with Contractual Relations and Business Relationships
**(Against Defendants University of Missouri, UMC Police Department, Cari Lyman, Officers Clifford, Berkert, John Doe # 1 and UMC Human Resource Officer John Doe #2 )**

239.  Plaintiff incorporates by reference the facts set forth in paragraphs 1 through 238 as though fully set forth herein.

### *Interference with Plaintiff's Business and Employment Relations:*

240.    Plaintiff had established long-standing and valuable relationships with various professors, alumni, business associates, and staff within the **University of Missouri-Columbia (UMC)** community. These included relationships that directly contributed to his **business ventures**, such as his work with UMC's **Small Business Administration (SBA) office**. Plaintiff's businesses, which had generated annual revenues exceeding **$10 million**, were reliant on these connections for continued operations and success. Additionally, Plaintiff's ongoing collaboration with UMC faculty members, graduate students, and staff had been vital to the completion of numerous **academic and business projects**.

241.    The unlawful **ban from campus** imposed by Defendants, coupled with the **denial of retirement benefits**, obstructed Plaintiff's ability to maintain these critical relationships and conduct his business. Plaintiff was unable to meet with **professors, graduate students**, or **business contacts** on campus, effectively severing the professional network that supported his businesses. As a direct result of this interference, Plaintiff's ability to **restart his companies**, engage in **business operations**, and fulfill existing contracts with UMC and related entities was severely impacted.

242.    Additionally, Plaintiff's businesses were significantly disrupted by Defendants' unlawful actions. Specifically, Plaintiff missed out on business opportunities that would have generated millions in income, including a lucrative consulting project with a prominent UMC alumni group. The wrongful interference with Plaintiff's access to business associates and alumni exacerbated the financial losses that Plaintiff had already incurred due to the initial wrongful actions taken by Defendants.

243.    Furthermore, Defendants' actions not only caused significant financial harm but also disrupted Plaintiff's ability to reestablish professional relationships that were essential for the success of Plaintiff's consulting and business ventures.

244.    Defendants' actions caused Plaintiff to lose lucrative business opportunities, including but not limited to **federal contracts** administered through the **U.S. General Services Administration (GSA)**, which Plaintiff had successfully maintained for over 30 years. Without access to necessary resources and personnel at UMC, Plaintiff was unable to complete the **certification renewal process** with the SBA, which directly led to the **shutdown of his businesses**. These businesses, which had been highly successful for decades, were forced to close, and Plaintiff suffered severe financial harm and emotional distress as a result.

### *Interference with Plaintiff's Right to Access Medical Care:*

245.    Plaintiff's ability to access medical care at the **University of Missouri Medical Center**, a facility he had relied on for years, was directly obstructed by

Case 2:24-cv-04213-SRB    Document 6    Filed 02/14/25    Page 42 of 53

the **ban from campus**. As Plaintiff's primary healthcare provider, UMC was critical to his health and well-being, particularly as he navigated his **advanced age** and complex medical needs.

246.        Due to Defendants' actions, Plaintiff was unable to attend **critical medical appointments**, resulting in disruptions to his ongoing medical treatment. This interference significantly impaired Plaintiff's access to necessary care, which jeopardized his health and emotional well-being.

247.        Defendants' actions constitute **tortious interference** with Plaintiff's established contracts and relationships with medical professionals at UMC, and intentionally disrupted Plaintiff's ability to receive medical treatment in a timely manner, causing both **physical harm** and emotional distress.

### *Interference with Plaintiff's Family and Personal Relationships:*

248.        In addition to business and medical interference, Defendants' unlawful ban from campus also obstructed Plaintiff's ability to engage with his family, particularly his **children**, both of whom are students at UMC. The ban prevented Plaintiff from accessing the campus to communicate with or interact with his children regarding important matters, such as **inheritance** and **family affairs**, as well as the status of his **real estate holdings** in both the U.S. and abroad.

249.        Defendants intentionally and maliciously interfered with Plaintiff's ability to maintain familial relationships, and this interference has caused severe emotional distress. The **loss of contact** with his children, coupled with the obstruction of business operations, contributed to Plaintiff's significant financial and emotional suffering.

### *Interference with Plaintiff's Use and Enjoyment of UMC's Facilities:*

250.        Defendants also intentionally interfered with Plaintiff's ability to **use and enjoy UMC's facilities** and services, which were essential not only for his personal and professional life but also for his ongoing participation in the **University's alumni events**, academic forums, and public community forums. As a long-time **alumnus** and supporter of UMC, Plaintiff's exclusion from the campus restricted his involvement in various **academic**, **professional**, and **community** events, including but not limited to **sports events**, **health seminars**, and **political forums**.

251.        The denial of Plaintiff's access to these services, combined with the intentional obstruction of Plaintiff's ability to conduct business on campus, resulted in **economic harm** and further disrupted Plaintiff's **contractual relationships** and **business operations**. These actions have caused Plaintiff substantial financial and professional setbacks.

*Further Statement of Facts:*

252.     Plaintiff's ongoing relationship with UMC's Small Business
        Administration (SBA) office was directly impacted by the unlawful ban from
        campus. The ban made it impossible for Plaintiff to maintain his ongoing business
        partnership, causing not only reputational damage but also financial losses that
        amounted to several million dollars in lost business revenue.

253.     As a result of Defendants' refusal to grant Plaintiff access to his retirement
        records and failure to allow Plaintiff to use University facilities for business-
        related purposes, Plaintiff missed a significant opportunity to meet with key
        business partners, who were prepared to invest in Plaintiff's ventures. These lost
        opportunities further compounded the financial damages caused by Defendants'
        wrongful actions.

**WHEREFORE,** Plaintiff Mehrdad Fotoohighiam respectfully prays for judgment
against Defendants University of Missouri, Cari Lyman, Chief Brian Weimer, UMC
Police Officers Clifford, Berkert and John Doe # 1, John Doe # 2, as follows:

a.  Plaintiff seeks compensatory damages in an amount to be determined at trial, but
    in no event less than $75,000, for the harm caused by Defendants' tortious
    interference with Plaintiff's business, employment, medical, familial, and personal
    relationships, including but not limited to the disruption of Plaintiff's business
    operations, financial losses, emotional distress, reputational damage, and loss of
    medical access.

b.  Plaintiff seeks punitive damages in an amount sufficient to punish Defendants for
    their malicious and willful misconduct and to deter Defendants and others from
    engaging in similar wrongful conduct in the future.

c.  Plaintiff seeks recovery for economic losses, including but not limited to lost
    business opportunities, financial damages, lost income from consulting contracts,
    business ventures, and missed opportunities for growth or partnership due to the
    interference caused by Defendants' unlawful actions.

d.  Plaintiff seeks damages for emotional distress resulting from Defendants'
    interference with Plaintiff's ability to conduct business, access medical care,
    maintain familial relationships, and participate in university-related activities,
    causing Plaintiff significant mental anguish and emotional harm.

e.  Plaintiff seeks injunctive relief requiring Defendants to remove the unlawful ban
    imposed on Plaintiff, restore his access to University facilities, and ensure that
    Plaintiff is provided access to the necessary records and resources required to
    resume business operations, receive medical care, and maintain personal
    relationships.

f.  Plaintiff seeks a declaratory judgment stating that Defendants' actions constitute
    unlawful interference with Plaintiff's contractual and business relationships, in
    violation of his rights under Missouri law, and that such actions were intentional,
    malicious, and wrongful.

g. Plaintiff seeks an award of reasonable attorneys' fees and costs incurred in the prosecution of this action, including but not limited to any fees authorized under applicable statutes, such as the Missouri Human Rights Act and other relevant state and federal laws.

h. Plaintiff seeks prejudgment interest on all amounts awarded, calculated from the date of the violation to the date of judgment, as well as post judgment interest as allowed by law.

i. Plaintiff prays for such other and further relief as the Court deems just and proper, including but not limited to any statutory or special damages available under Missouri law, to fully compensate Plaintiff for the injuries and losses sustained as a result of Defendants' wrongful conduct.

---

# COUNT XI
## <u>Negligence and Negligent Infliction of Emotional Distress</u>
**(Defendants Cari Lyman, Chief Brian Weimer, UMC Police Officers Clifford, Berkert, John Doe # 1; and UMC Human Resource Officer John Doe # 2)**

### *Failure to Provide Adequate Process or Procedures:*

254. Plaintiff incorporates by reference the facts set forth in paragraphs 1 through 253 as though fully set forth herein.

255. Defendants negligently failed to implement adequate procedures or provide due process before denying Plaintiff his retirement benefits and before placing him under an arbitrary ban from the University of Missouri-Columbia campus.

256. Defendants ignored Plaintiff's rights and failed to investigate or respond reasonably to Plaintiff's repeated requests for benefits and his inquiries about the ban.

257. Defendants' actions, including the wrongful denial of retirement benefits and the unjustified campus ban—were careless and reckless, disregarding Plaintiff's rights and wellbeing.

### *Infliction of Emotional Distress:*

258. As a direct and proximate result of Defendants' negligent actions, Plaintiff has suffered severe emotional distress, including but not limited to anxiety, depression, and severe emotional upset.

259. Plaintiff's distress was the foreseeable and natural consequence of Defendants' negligent acts, including the denial of benefits, the arbitrary and unreasonable campus ban, and the interference with Plaintiff's business and personal relationships.

Case 2:24-cv-04213-SRB    Document 6    Filed 02/14/25    Page 45 of 53

260. Plaintiff has been diagnosed by a qualified medical professional with emotional distress directly caused by Defendants' actions. The emotional distress experienced by Plaintiff is medically diagnosable and has resulted in identifiable psychological and emotional harm, including but not limited to severe anxiety, depression, and emotional trauma.

261. As a result of Defendants' conduct, Plaintiff required medical treatment for emotional distress, including therapy and psychiatric care, and the emotional injuries sustained were medically recognized as a direct result of Defendants' negligent conduct.

262. Under Missouri law, a claim for **Negligent Infliction of Emotional Distress (NIED)** arises when a defendant's negligent conduct causes severe emotional distress that is medically diagnosable.

263. To prevail on an NIED claim, Plaintiff must prove that Defendants' negligent actions were the proximate cause of the emotional distress suffered, and that the distress was severe and medically diagnosable.

264. Defendants' actions in denying Plaintiff his benefits, banning him from campus without justification, and interfering with his ability to engage in medical care and business relationships were a direct and proximate cause of Plaintiff's medically diagnosable emotional distress.

265. Defendants knew or should have known that their actions would likely result in severe emotional distress to Plaintiff.

266. Under Missouri law, individuals are entitled to protection from negligent conduct that causes severe emotional distress that is medically diagnosable. Defendants acted with a reckless disregard for Plaintiff's emotional wellbeing, and their conduct was a direct cause of the distress Plaintiff experienced.

**WHEREFORE,** Plaintiff prays for relief in excess of $75,000, including compensatory damages for emotional distress, punitive damages, and any other available damages allowed under Missouri state law for negligent infliction of emotional distress.

---

# COUNT XII
## Monell Claim – Municipal Liability Under 42 U.S.C. § 1983
(Against Defendants University of Missouri, UMC Police Department, Chief Brian Weimer, and Cari Lyman)

267. **Plaintiff** incorporates by reference the facts set forth in paragraphs 1 through 266 as though fully set forth herein.

268. **Defendants University of Missouri**, the **UMC Police Department**, **Chief Brian Weimer**, and **Cari Lyman** (the former Director of Human Resources at UMC) are all **acting under color of state law** and are subject to suit under **42 U.S.C. § 1983** for violations of Plaintiff's constitutional rights.

Page **46** of **53**

269.     **Cari Lyman**, at all times relevant to this Complaint, was employed by the University of Missouri-Columbia as the **Director of Human Resources**. In her capacity as Director, **Lyman** was responsible for overseeing the processing of employee records, benefits claims, and compliance with employment laws, including laws governing retirement benefits for employees like Plaintiff.

270.     **Defendants' actions were carried out in accordance with a policy, custom, or practice**, or **failure to train and supervise** employees, which caused the violations of Plaintiff's constitutional rights. These actions, as set forth herein, include the **denial of Plaintiff's retirement benefits**, **unlawful retaliation** for asserting his rights, and **unjustified banning** from campus.

271.     The **University of Missouri**, the **UMC Police Department**, and the **Human Resources Department**, which **Cari Lyman** oversaw, each acted with deliberate indifference to Plaintiff's constitutional rights. Their failure to address the violations or take corrective actions regarding the unlawful acts perpetrated against Plaintiff constitutes a policy, custom, or practice of **failing to properly handle employee grievances**, **retaliating against employees** for asserting their rights, and **denying due process** to employees seeking to assert their claims.

272.     The failure of Defendants to address Plaintiff's legitimate claims demonstrates systemic issues within the University, including a **pattern of retaliation and failure to train or supervise** employees in handling claims like Plaintiff's. Specifically, there is a **custom or practice of retaliating against employees** who assert their legal rights and a failure to ensure that employees, like Plaintiff, are properly heard or treated fairly when making legitimate requests for benefits. The **University's handling of Plaintiff's retirement claim** reflects broader issues within **UMC's Human Resources** and the **UMC Police Department**, where employees with legitimate concerns are often ignored, mistreated, or retaliated against.

273.     Emphasizing the **deliberate indifference** to Plaintiff's rights, it is evident that the University's failure to act wasn't a **single instance of neglect** but rather a broader failure of policy and practice that is likely affecting other employees in similar situations. Plaintiff's harm—ranging from **emotional distress, financial hardship, reputational damage,** and the **denial of retirement benefits**—was caused not just by the actions of **Cari Lyman** or **the UMC Police officers**, but by the **University's systemic failure to follow proper procedures** in addressing grievances, ensuring employees' rights, and addressing discrimination or retaliation claims.

*Policy Impact:*

274.     The failure of the University to adequately train, supervise, or hold employees accountable for actions like those taken against Plaintiff has resulted in a **culture of misconduct** within the **Human Resources Department** and **UMC Police Department**. This culture of misconduct is rooted in the **University's**

policy or custom of failing to properly handle employee claims, denying
employees' legal entitlements, and retaliating against those who challenge the
institution's decisions. This policy-driven misconduct reflects an **ongoing,
systemic issue** where employee rights are disregarded, and retaliation for asserting
those rights is tolerated.

275.     **Specific policies, customs, and practices** that were the moving force
behind the constitutional violations include, but are not limited to:

    a. **A custom and practice of retaliating against employees** who assert their
constitutional rights, such as Plaintiff asserting his entitlement to retirement
benefits after his seven years of service at UMC.

    b. **Failure to implement or follow established procedures** for resolving
disputes regarding employee retirement claims, resulting in the wrongful
denial of benefits to Plaintiff, who had been employed at UMC for seven
years.

    c. **A pattern of discrimination and retaliation** within the Human Resources
Department, evidenced by the wrongful actions of **Cari Lyman** when she
denied Plaintiff's legitimate retirement benefits and misrepresented his
employment record. Defendants retaliated against Plaintiff after he asserted
his rights under law, including a wrongful campus ban and failure to
provide any due process or clear reasoning for such actions.

    d. **A failure to train, supervise, and discipline employees** in the proper
handling of grievances, particularly in cases involving the assertion of
employees' rights to benefits and the exercise of free speech. Despite
Plaintiff's repeated attempts to resolve his issue, **UMC** failed to investigate
or take any corrective action with respect to Plaintiff's claims.

    e. **Failure to investigate allegations of discrimination** or retaliation when
Plaintiff raised his concerns regarding his denied benefits, the unlawful
campus ban, and the failure to provide due process. These failures
demonstrate a **pattern of deliberate indifference** to the rights of
employees and students, particularly when those employees assert their
rights or challenge the University's decisions.

276.     **As a direct and proximate result** of the policies, practices, and failures to
act described above, Plaintiff has suffered damages, including:

    a. The **deprivation of his retirement benefits** that he was lawfully entitled to
under UMC's retirement plan after his seven years of employment at the
University.

    b. **Emotional distress**, including significant anxiety, depression, and
humiliation caused by the unlawful campus ban, the denial of benefits, and
the failure to rectify these issues.

    c. **Financial harm**, as Plaintiff has been denied the benefits owed to him,
which has caused him hardship.

    d. **Damage to reputation**, as Plaintiff's standing and relationship with the University and the community have been harmed by the wrongful actions of Defendants, including the public and unjustified ban from campus.

277.   Defendants' **deliberate indifference** to the constitutional rights of Plaintiff, and their **failure to train, supervise, or implement policies** that would have prevented these violations, has created a culture in which the rights of employees like Plaintiff are routinely disregarded.

278.   These actions, policies, and failures have created an environment in which employees feel they can be **retaliated against for asserting their rights** without consequence.

279.   **Defendants' unlawful policies, practices, and actions were the moving force behind the constitutional violations** suffered by Plaintiff, including retaliation for exercising his rights, the unlawful denial of retirement benefits, and the unjustified banning from campus.

280.   These actions were committed with the **knowledge, acquiescence, or deliberate indifference** of the policymakers at UMC, including **Cari Lyman**, and were motivated by animus toward Plaintiff for asserting his rights.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the following relief:

    a. **Compensatory damages** in an amount to be determined at trial, in excess of $75,000, for the harm caused by Defendants' unconstitutional actions.

    b. **Punitive damages** to deter Defendants and other similarly situated public entities from engaging in such conduct in the future.

    c. **Attorney's fees**, **costs**, and any other relief available under **42 U.S.C. § 1988**.

    d. **Injunctive relief** requiring the University of Missouri and/or UMC Police Department to take corrective action, including the implementation of policies and procedures to prevent further violations of constitutional rights, including retaliation and discrimination claims.

    e. Any other relief that the Court deems just and proper.

# VI. JURY TRIAL DEMAND

281.   **Plaintiff** incorporates by reference the facts set forth in paragraphs 1 through 280 as though fully set forth herein.

282.   Plaintiff demands a jury trial.

# VII. PRAYER

**283.**    Plaintiff incorporates by reference the facts set forth in paragraphs 1 through 282 as though fully set forth herein.

**284.**    Plaintiff **Mehrdad Fotoohighiam** respectfully prays for judgment against Defendants **Cari Lyman**, **Chief Brian Weimer**, the **University of Missouri**, the **University of Missouri Police Department**, and any other Defendants as may be identified, as follows:

a.   Plaintiff prays for compensatory damages in an amount to be determined at trial, but in any event, in excess of **$75,000**, for the harm caused by Defendants' violations of Plaintiff's constitutional and legal rights, including but not limited to the emotional, financial, and reputational damages resulting from the unlawful denial of his retirement benefits, the unlawful campus ban, and other acts of misconduct.

b.   Plaintiff seeks **punitive damages** in an amount sufficient to deter Defendants from engaging in similar unlawful conduct in the future, and to punish Defendants for their **willful**, **malicious**, and **reckless** actions that violated Plaintiff's rights.

c.   Plaintiff seeks **damages for emotional distress**, including but not limited to **anxiety, depression, emotional trauma**, and other psychological injuries caused by Defendants' unlawful conduct. These damages include compensation for the **medically diagnosable emotional distress** Plaintiff suffered, as well as damages for the **pain and suffering** caused by Defendants' misconduct.

d.   Plaintiff seeks an award of **reasonable attorneys' fees**, **costs of litigation**, and any other costs incurred in pursuing this action, as authorized by **42 U.S.C. § 1988**, **Title VII**, the **Missouri Human Rights Act**, and other applicable state and federal laws.

e.   Plaintiff seeks **prejudgment interest** and **post judgment interest** on all amounts awarded in this action, as allowed by law, from the date of the violation to the date of judgment and beyond.

f.   Plaintiff prays for appropriate **injunctive relief**, including but not limited to:

i.   An order **removing the ban** imposed by Defendants on Plaintiff, and restoring his access to the **University of Missouri campus** and related **facilities**.

ii.   An order **requiring the University of Missouri** and its personnel to **fully and accurately process** Plaintiff's **retirement benefits**, and restore any retirement benefits and related entitlements owed to Plaintiff.

    **g.** Plaintiff seeks a **declaratory judgment** stating that Defendants' actions violated Plaintiff's **constitutional rights**, including his *First Amendment* right to free speech and his *Fourteenth Amendment* rights to due process and equal protection, as well as his rights under the **Missouri Human Rights Act** and other applicable laws.

    **h.** Plaintiff further prays for any other relief that the Court deems just and proper, including but not limited to any statutory or special damages allowed under state or federal law, in amounts to be determined at trial.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and grant him all relief to which he is entitled, in an amount in excess of **$75,000**, and that this Court award such other and further relief as it deems just and proper.

## VIII.    EXHIBITS:

285.      Plaintiff incorporates by reference the facts set forth in paragraphs 1 through 284 as though fully set forth herein.

286.      Defendant files with this Complaint, as attachments the following exhibits which are incorporated herein by reference as if stated fully herein verbatim:

    **a.** **Exhibit A**: Right to Sue under the Missouri Human Rights Act

    **b.** **Exhibit B**: Right to Sue under Title VII of the Civil Rights Act of 1964

    **c.** **Exhibit C**: Demand for Settlement

## IX.    SIGNATURE:

**Signature of Petitioner:**

Signature: _____

Date: _____

# X. VERIFICATION FOR PETITION

**STATE OF** _Missouri_ ]

] **S.S.**

**COUNTY** _Boone_ ]

I, _Mehrdad Fotoohighiam_ , being first duly sworn, depose and say:

**A.** I am the petitioner in the above-referenced matter, and I make this verification based on my personal knowledge of the facts set forth in the petition.

**B.** I have read the petition, and the facts stated therein are true to the best of my knowledge, information, and belief.

**C.** I understand that the contents of the petition may be used in legal proceedings, and I hereby declare that everything stated in the petition is true and correct.

**D.** I affirm that this verification is made in good faith, without any intent to mislead or deceive.

**E.** I swear under the penalty of perjury that the preceding facts and information are true and correct to the best of my knowledge and belief.

**Signature of Petitioner:**

Signature: _[signature]_

Full Name: _Mehrdad Fotoohighiam_

**Sworn to and Subscribed Before Me** this ___3rd___ day of **February 2025.**

**Signature of Notary Public:**

_[signature]_

Notary Public Name: _Alicia Bohn_

**My Commission Expires:**

_June 25, 2027_

Date of Expiration: _June 25, 2027_

**Notary Seal:**

ALICIA ANNE BOHN
Notary Public - Notary Seal
STATE OF MISSOURI
County of Boone
My Commission Expires: June 25, 2027
Commission #23644597

Page **52** of **53**

# XI.  SUBMISSION

Respectfully submitted on behalf of
Plaintiff by:

/s/ Alex Perry
Matthew (Alex) Perry
MO Bar Number: 64079
Perry Law Firm, LLC
1220 Sunset Drive
Columbia, MO 65203
Phone: (573) 777-2623
APerryLawFirm@gmail.com

## Attorney for Plaintiff

Page **53** of **53**